CITIZENS TO SAVE OUR LAND *et al.*, Plaintiffs-Appellants, *v.* McKEE CREEK WATERSHED CONSERVANCY DISTRICT OF ADAMS, BROWN AND PIKE COUNTIES, *et al.*, Defendants-Appellees.

Fourth District   No. 13367

Opinion filed May 6, 1976.

Robert G. Staff and James L. Palmer, both of Scholz, Staff & Brickman, of Quincy, for appellants.

Lewis, Blickhan, Garrison, Tucker and Longlett, of Mt. Sterling (Edward Tucker and Ronald Kanoski, of counsel), for appellee McKee Creek Watershed Conservancy District of Adams, Brown and Pike Counties.

Robert J. Bier, State's Attorney, of Quincy, for appellee Adams County.

John W. Alsup, State's Attorney, of Mt. Sterling, for appellee Brown County.

Mr. JUSTICE GREEN delivered the opinion of the court:

Pursuant to the authority granted by the River Conservancy Districts Act (Ill. Rev. Stat. 1965, ch. 42, par. 383 *et seq.*), and in accordance with the procedures set forth therein, the formation of the McKee Creek Watershed Conservancy District of Adams, Brown, and Pike Counties (hereafter called the District) began in March of 1967 and was completed in August of 1967. From the time of its establishment until early in 1974, the District's primary activities involved the planning and creation of an integrated watershed work plan for the District and the consideration of various methods for financing such a project. In 1974, the District adopted an ordinance for the implementation of a major local improvement including the acquisition of land and the construction of a series of lakes to supply water for municipalities, to provide recreation, and to prevent flooding. This project was to be financed by special assessment.

The plaintiffs then filed a complaint seeking injunctive relief to restrain the District from exercising any further authority under the provisions of the River Conservancy Districts Act on the theory that such Act is unconstitutional. The plaintiffs are Citizens to Save Our Land (a not-for-

profit Illinois corporation) and numerous individuals who are landowners and residents within the District. After a hearing on the merits, the trial court dismissed the complaint. The plaintiffs appeal. We shall affirm.

The major contention advanced by the plaintiffs is that the River Conservancy Districts Act is unconstitutional because it provides for the appointment, rather than popular election, of the trustees of a river conservancy district. At the time when the defendant District was formed, the Act provided that the trustees of a district would be appointed by the court. (Ill. Rev. Stat. 1965, ch. 42, par. 386a.) The Act was amended to change the method of appointment of trustees. The present statute provides for various methods of appointment of the trustees by elected local governmental officials. (Ill. Rev. Stat. 1973, ch. 42, par. 386a.) This amended method ·of appointment is a familiar procedure in Illinois. See the statutes regarding Drainage Districts and Surface Water Protection Districts (Ill. Rev. Stat. 1973, ch. 42, pars. 3—9, 4—1, 456), Forest Preserve Districts and Conservation Districts (Ill. Rev. Stat. 1973, ch. 57½, pars. 3a, 105), and Fire Protection Districts (Ill. Rev. Stat. 1973, ch. 127½, par. 24).

The plaintiffs argue that the District is a local legislative body having general governmental powers; that, therefore, the trustees should be selected by popular election; and that the failure to select the trustees by popular election violates the "one-man, one-vote" principle and deprives the plaintiffs of due process and equal protection of the law. That specific issue has not been decided. As the United States Supreme Court has noted, "We need not decide at the present time whether a State may constitute a local legislative body through the appointive rather than the elective process. We reserve that question for other cases * * *." (*Sailors v. Board of Education*, 387 U.S. 105, 109-10, 18 L. Ed. 2d 650, 654, 87 S. Ct. 1549.) In *Sailors*, the court held that a Michigan county board of education (which was an appointed body under State statute) performed essentially administrative functions rather than legislative activities and that such nonlegislative officials could be appointed.

■■ Nor will we have to decide the question, for we have concluded that the district is a limited purpose unit whose trustees perform nonlegislative functions. We have found guidance on the issue of whether the District is a local legislative body or a special purpose unit performing nonlegislative functions in the cases which involve the determination of whether elections of local public officials must comply with the "one-man, one-vote" standard established by the line of decisions beginning with *Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663, 82 S. Ct. 691, and *Reynolds v. Sims*, 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362. The analytical method applied by the United States Supreme Court to determine whether the election of a local public official must comply with the "one-man, one-

vote" standard is to determine whether the body to which such official is elected is a local legislative body whose activities have influence on the citizenry generally or whether the body is a special limited-purpose body whose activities primarily affect a special group of citizens.

In *Avery v. Midland County*, 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114, the court was confronted with the question of whether the election of a county governing board in Texas, called the Midland County Commissioners Court, must adhere to the *Reynolds* standard. The county commissioners were empowered to appoint numerous minor county officials, to let contracts in the name of the county, to build roads and bridges, to adopt the county budget, to set the county tax rate, to administer the county's public welfare program, to build a hospital, airport, and library, to fix boundaries for school districts, and the like. As the court stated:

> "Were the Commissioners Court a special-purpose unit of government assigned the performance of functions affecting definable groups of constituents more than other constituents, we would have to confront the question whether such a body may be apportioned in ways which give greater influence to the citizens most affected by the organization's functions. That question, however, is not presented by this case, for while Midland County authorities may concentrate their attention on rural roads, the relevant fact is that the powers of the Commissioners Court include the authority to make a substantial number of decisions that affect all citizens, whether they reside inside or outside the city limits of Midland." (390 U.S. 474, 483-84, 20 L. Ed. 2d 45, 53, 88 S. Ct. 1114, 1120.)

> "We hold today only that the constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body." (390 U.S. 474, 484-85, 20 L. Ed. 2d 45, 53, 88 S. Ct. 1114, 1120.)

The election of the county governing board was required to satisfy the "one-man, one-vote" standard. The same result was reached regarding the election of the trustees of a junior college district in Missouri in *Hadley v. Junior College District*, 397 U.S. 50, 25 L. Ed. 2d 45, 90 S. Ct. 791, which was the farthest extension of the "one-man, one-vote" requirement.

> "Appellants argue that since the trustees can levy and collect taxes, issue bonds with certain restrictions, hire and fire teachers, make contracts, collect fees, supervise and discipline students, pass on petitions to annex school districts, acquire property by condemnation, and in general manage the operations of the Junior College, their powers are equivalent, for apportionment purposes,

to those exercised by the county commissioners in *Avery*. We feel that these powers, while not fully as broad as those of the Midland County Commissioners, certainly show that the trustees perform important governmental functions within the Districts, and we think these powers are general enough and have sufficient impact throughout the District to justify the conclusion that the principle which we applied in *Avery* should also be applied here." 397 U.S. 50, 53-54, 25 L. Ed. 2d 45, 49, 90 S. Ct. 791, 794.

More recently, however, in *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 35 L. Ed. 2d 659, 93 S. Ct. 1224, the court considered whether the board of directors of a water storage district in California had to be elected under the "one-man, one-vote" principle and reached a different conclusion.

"We conclude that the appellee Water Storage District, by reason of its special limited purpose and of the disproportionate effect of its activities on landowners as a group, is the sort of exception to the rule laid down in *Reynolds* which the quoted language from *Hadley*, *supra*, and the decision in *Avery*, *supra*, contemplated.

"The appellee District in this case, although vested with some typical governmental powers, has relatively limited authority. Its primary purpose, indeed the reason for its existence, is to provide for the acquisition, storage, and distribution of water for farming in the Tulare Lake Basin." 410 U.S. 719, 728, 35 L. Ed. 2d 659, 666, 93 S. Ct. 1224, 1229-30.

■■ The powers of the trustees of the District in the present case are analogous to the powers of the directors of the water storage district in *Salyer*. In *Salyer*, the directors were authorized to plan and adopt projects for the acquisition, appropriation, diversion, storage, conservation, and distribution of water. The directors also had incidental authority to provide for hydroelectric power and flood control. In the present case, the trustees may exercise their powers for the purposes of effectuating "river and flood control, drainage, irrigation, conservation, sanitation, navigation, recreation, development of water supplies, sewage systems, and the protection of fish life" as described in the title of the Act. In *Salyer*, the directors had authority to finance projects by assessments against the lands benefited by such projects. In the instant case, the trustees are empowered to finance projects by special assessment or general taxation. (Ill. Rev. Stat. 1973, ch. 42, par. 404.) In *Salyer*, the directors have the power to employ and discharge persons on a regular staff, to contract for the construction of projects for the Water Storage District, to condemn private property for use in such projects, and to authorize general obligation bonds and interest bearing warrants. In the

present case, the trustees may hire, and fix the compensation for, a staff of employees (Ill. Rev. Stat. 1973, ch. 42, par. 388); may enter into contracts for the construction of its projects and the operations of its facilities (Ill. Rev. Stat. 1973, ch. 42, pars. 394, 399); may exercise the power of eminent domain (Ill. Rev. Stat. 1973, ch. 42, par. 393); and may issue revenue bonds (Ill. Rev. Stat. 1973, ch. 42, pars. 397-398.3). The trustees of the District in the instant case possess some powers which the directors in *Salyer* do not appear to have possessed. For example, the trustees are authorized to appoint a police force to prevent pollution and prevent interference with property belonging to the District, and to acquire lands contiguous to its reservoirs and to make improvements thereon for recreational purposes. However, such powers are clearly related and incidental to the stated purpose of the River Conservancy Districts Act. Therefore, we conclude that the defendant District is a special purpose unit of government whose trustees perform essentially nonlegislative functions. Such trustees may be appointed.

Next, the plaintiffs argue that the River Conservancy Districts Act delegates purely legislative functions to the judicial branch in violation of the constitutional doctrine of separation of powers. The plaintiffs contend that the role of the court in the determination of the boundaries for a river conservancy district violates that doctrine. At the time the defendant District was formed in 1967, the River Conservancy Districts Act provided that a petition to establish a conservancy district must contain a description of the boundaries of the proposed district; that the court could accept such boundaries or change them; that a hearing on the petition to form a conservancy district would then be held at which persons in the proposed district would have an opportunity to be heard on the subject of the boundaries of the district; and that the court would then fix and determine the boundaries (Ill. Rev. Stat. 1965, ch. 42, par. 383).

To commence our analysis, we note three facts which we deem significant concerning this issue. First, although the district was formed (which, of course, required its boundaries to be set) in 1967, the plaintiffs did not challenge the propriety of the method for determining the boundaries until nearly 7 years later in 1974. Second, the plaintiffs do not contend that the actual boundaries of the District are in any manner improper or detrimental but only that the method for setting such boundaries is technically inappropriate. Third, even after the court has fixed the boundaries for a proposed conservancy district, the voters within the proposed district are given the opportunity to elect whether to establish such a district. (Ill. Rev. Stat. 1965, ch. 42, par. 383.) If dissatisfied with the boundaries, the voters can disapprove the formation of a district. The voters have final authority.

■■ In support of the proposition that the role of the court in the determination of the boundaries for a proposed river conservancy district violates the doctrine of separation of powers, the plaintiffs cite *Funkhouser v. Randolph*, 287 Ill. 94, 122 N.E. 144. In *Funkhouser*, the Little Wabash River Drainage District Act was held unconstitutional. That decision was based partially on the conclusion that legislative functions had been delegated to the judicial branch. Those legislative functions included determinations by the court of whether a special drainage district should be organized and what land should be included in such a district. The statute did not require an election to determine whether to form a district. The emphasis of the opinion is upon the impropriety of delegating to the judicial branch the determination of whether a district should be organized. That significant aspect of *Funkhouser* is not present here and distinguishes *Funkhouser* from the instant case in which the court merely sets boundaries and the voters determine whether to form the district. We view the participation of the court in the determination of the boundaries of a proposed river conservancy district (which district can be established only after approval by the voters) as quite similar to the court's function in fixing the boundaries of a proposed fire protection district. Such judicial involvement under the Fire Protection Districts Act was held not to constitute a violation of the separation of powers doctrine. (*People ex rel. Armstrong v. Huggins*, 407 Ill. 157, 94 N.E.2d 863.) See also *Board of Education v. Nickell*, 410 Ill. 98, 101 N.E.2d 438, where the court was authorized to decide petitions for changes of boundaries for school districts. By statute in Illinois, the court also fixes the boundaries for Sanitary Districts (Ill. Rev. Stat. 1973, ch. 42, par. 248) and Surface Water Protection Districts (Ill. Rev. Stat. 1973, ch. 42, par. 450) and determines whether the boundaries of Park Districts are reasonable (Ill. Rev. Stat. 1973, ch. 105, par. 2—4).

■■ Additionally, the plaintiffs in the present case have assailed other functions of the court as violative of the doctrine of separation of powers. They point out that petitions to organize a river conservancy district are filed with the court, that the court sets the date for the special election to organize a river conservancy district, that the court is authorized to canvass and determine the results of the special election, and so on. "It has been held from the outset, however, that the doctrine of separation of powers does not inexorably preclude one of the three departments of government from exercising powers which could also be given to another department." (*Nickell*, 410 Ill. 98, 104, 101 N.E.2d 438, 441.) Illinois has a tradition of allowing judicial involvement to the extent provided in the River Conservancy Districts Act and beyond. See the statutes regarding incorporation of cities and villages and annexation and disconnection of territory (Ill. Rev. Stat. 1973, ch. 24, pars. 2—3—5, 2—3—6, 2—2—6

through 2—2—8, 7—1—2, 7—1—4, 7—1—7, 7—1—11, 7—3—1 through 7—3—3); Drainage Districts, Sanitary Districts, and Surface Water Protection Districts (Ill. Rev. Stat. 1973, ch. 42, pars. 3—3, 3—4, 3—7 through 3—9, 3—15, 3—17, 3—21, 3—23, 3—26, 247 through 250, 450 through 451a); Conservation Districts and Forest Preserve Districts (Ill. Rev. Stat. 1973, ch. 57½, pars. 1, 104); Park Districts (Ill. Rev. Stat. 1973, ch. 105, pars. 2—2 through 2—6); and Fire Protection Districts (Ill. Rev. Stat. 1973, ch. 127½, pars. 21, 23).

■■ Another contention raised by the plaintiffs is that the River Conservancy Districts Act is unconstitutionally broad and vague. Although the plaintiffs cite various sections of the Act, they cite no precedent to support their argument. Furthermore, each point raised by the plaintiffs involves either an argument concerning the formation of the District seven years earlier or an argument concerning actions the District has not yet taken and is not alleged to be about to take.

■■ The plaintiffs also argue that the River Conservancy Districts Act is unconstitutional because it does not provide for adequate notice of the formation of a district to the interested parties. Citing the provisions for notice of the hearing on the petition to form a river conservancy district and for notice of the election to establish such a district (Ill. Rev. Stat. 1965, ch. 42, par. 383), the plaintiffs concede that the notice given in the instant case (7 years ago) complied with the statutorily required notice, but the plaintiffs contend that the statute's provisions for notice are constitutionally inadequate. We view the plaintiffs' argument to be without merit. The plaintiffs have again failed to cite any precedent for their position. The notice of the public hearing on the petition to organize the defendant District was published on several occasions in newspapers within the proposed district. Such notice identified the proposed district by name, stated the purpose for the hearing, identified the statutory provision which authorized the organization of such a district, and stated that the petition to form the district would be available for public inspection prior to the hearing. Similarly, the notice of the special election to determine whether to form the defendant District was published on several occasions within the proposed district.

Finally, the plaintiffs contend that the River Conservancy Districts Act is unconstitutional because it permits the District to make local improvements by special assessment. From the time the defendant District was formed to the present, the River Conservancy Districts Act has purported to authorize river conservancy districts to finance projects by means of special assessments (Ill. Rev. Stat. 1965-1973, ch. 42, pars. 404-406). The plaintiffs point out, however, that the Illinois Constitution of 1970 provides:

"Townships, school districts, special districts and units,

designated by law as local units of government, which exercise limited governmental powers or powers in respect to limited governmental subjects shall have only powers granted by law. No law shall grant the power * * * (2) to make improvements by special assessments to any of the foregoing classes of units which do not have that power on the effective date of this Constitution." (Ill. Const. 1970, art. VII, §8.)

In order to determine whether river conservancy districts are among the classes of units which had the power to levy special assessments on the effective date of the Constitution of 1970, the plaintiffs refer to the Illinois Constitution of 1870 which was in effect at the time the District was formed in 1967. The 1870 Constitution stated, in part, as follows:

"The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment * * *." (Ill. Const. 1870, art. IX, §9.)

The plaintiffs conclude that the District is not a city, town, or village and, therefore, cannot exercise the power of special assessment. We disagree.

The Supreme Court interpreted the meaning of section 9 of article 9 of the Constitution of 1870 beyond its literal terms "cities, towns, and villages" to include park districts which were organized as the result of the approval of the voters within such districts. (*West Chicago Park Commissioners v. Sweet*, 167 Ill. 326.) In like fashion, the voters within the defendant District gave their approval to the establishment of the District. Furthermore, section 31 of article IV of the Illinois Constitution of 1870 was amended in 1878 to provide:

"The General Assembly may pass laws, permitting the owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts, and vest the corporate authorities thereof, with power to construct and maintain levees, drains and ditches, and to keep in repair all drains, ditches and levees heretofore constructed under the laws of this State, by special assessments upon the property benefited thereby."

A river conservancy district is a type of drainage district. The River Conservancy Districts Act is included in the chapter on Drainage in the Illinois Revised Statutes. Drainage districts under amended section 31 of article IV of the Illinois Constitution of 1870 could be organized "for agricultural, sanitary or mining purposes." The purposes of a river conservancy district are "to effectuate river and flood control, *drainage, irrigation,* conservation, *sanitation,* navigation, recreation, development of water supplies, *sewerage systems,* and the protection of fish life" as stated in the title to the River Conservancy Districts Act. (Emphasis

added.) A stated purpose of the defendant District is to effectuate drainage. Additionally, irrigation is an agricultural purpose. The effectuation of sanitation and the development of sewerage systems are sanitary purposes. The defendant District is a kind of drainage district.

The Supreme Court has held that the legislature in the proper exercise of its police power, and consistent with the provisions of section 31 of article IV and section 9 of article IX of the Illinois Constitution of 1870, may authorize a sanitary district to make local improvements by special assessment. (*Taylorville Sanitary District v. Winslow*, 317 Ill. 25.) We believe that the legislature could properly authorize river conservancy districts to levy special assessments.

■■ Lastly, we note with emphasis that, at the time of the drafting of section 8 of article VII of the Illinois Constitution of 1970, river conservancy districts pursuant to statute had for many years been exercising the power to levy special assessments. The drafters of the Constitution must have intended that river conservancy districts would be among the classes of units which would have the power of special assessment on the effective date of the Constitution of 1970.

Consequently, the judgment of the circuit court dismissing the complaint for injunctive relief is affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.