Joseph S. ROSENTHAL, Plaintiff,

v.

BOARD OF EDUCATION OF CENTRAL HIGH SCHOOL DISTRICT NO. 3 OF the TOWN OF HEMPSTEAD et al., Defendants,

Ewald Nyquist, Commissioner of Education of the State of New York, Intervenor-Defendant.

No. 72–C–820.

United States District Court, E. D. New York.

Nov. 8, 1974.

Judgment Affirmed March 24, 1975. See 95 S.Ct. 1418.

Friedlander, Gaines, Ruttenberg & Goetz, New York City, for plaintiff; by Joseph S. Rosenthal, Edward Cherney, New York City, of counsel.

Eugene Eisenberg and Bernard Morris, Merrick, N. Y., for defendant Bd. of Ed. of Cent. H. S. Dist. No. 3.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, by A. Seth Greenwald, Asst. Atty. Gen., of counsel, for Ewald Nyquist, intervenor-defendant.

Before MANSFIELD, Circuit Judge, and JUDD and NEAHER, District Judges.

## OPINION AND ORDER

### PER CURIAM.

A three-judge court was convened to consider the constitutional question whether Section 1901 of the New York Education Law, McKinney's Consol. Laws, c. 16, which provides the method of selection of members of central high school district boards of education, is violative of the "one man, one vote" principle.

Plaintiff, a resident and voter of Merrick, Long Island, brought a civil rights action in the Eastern District of New York seeking (1) a declaration that Section 1901 is unconstitutional, (2) a declaration that the defendant Board of Education of Central High School District No. 3 of the Town of Hempstead (Central Board) is unconstitutionally constituted, and (3) a direction to hold an immediate district-wide election for the Central Board.

The State Commissioner of Education was granted leave to intervene as a defendant, on motion by the Attorney General of New York. 28 U.S.C. § 2284(2).

The deposition of the President of the Central Board was taken, particularly with respect to the nature of that board's functions. Plaintiff then moved for an order convening a three-judge court and for summary judgment, and the intervenor-defendant moved to dismiss the complaint.

The district judge denied plaintiff's motions to convene a three-judge court and for summary judgment, 28 U.S.C. § 2281, F.R.Civ.P. 56, and granted the motion of defendants (the Central Board and the Boards of the four union free school districts which comprise the Central District) and the intervenor-defendant (Commissioner of Education of the State of New York) to dismiss the complaint as failing to state an actionable claim. F.R.Civ.P. 12(b)(6); Rosenthal v. Board of Education (E.D.N.Y. October 9, 1973).

On appeal, the United States Court of Appeals for the Second Circuit reversed and remanded for the constitution of a three-judge court. It recognized that the one man, one vote rule does not apply to an appointive board, Sailors v. Board of Education of County of Kent, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), but held that the method of selection was somewhere between the situation in *Sailors* and that in Hadley v. Junior College District of Metropolitan Kansas City, Missouri, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), where the voters of separate school districts comprising a junior college district voted directly for the election of trustees. In the absence of definitive guidance from *Sailors* or *Hadley,* the Court concluded that a substantial constitutional question had been presented requiring the convening of a three-judge court, Rosenthal v. Board of Education, 497 F.2d 726, 2 Cir., but it added (at p. 730), "We express no opinion concerning the merits."

At the hearing following the remand, plaintiff conceded that no evidentiary exploration was required since the operative facts were not in dispute.

The four separate union free school districts, which comprise Central High

School District No. 3, have varying populations: North Bellmore—23,105; Bellmore—18,697; Merrick—25,940; North Merrick—13,724. The qualified voters in each of these districts elect the members of that district's Board of Education. The four local boards have a total of 25 members. The members of each of the component boards then appoint two members each to the Central Board, thus creating an eight-member Central Board. Plaintiff contends that this two-tier system results in the dilution of his vote as a resident of the most populous component district.

Although recent decisions of the Supreme Court, Salyer Land Co. v. Tulare Lake Basin Water Storage District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); Associated Enterprises, Inc. v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973), have retrenched somewhat from the expansion of the one man, one vote principle by not applying it in elections in special purpose districts, it is clear that boards of education, both district and county, whose members are elected by popular vote, must be apportioned according to that principle. If plaintiff did in fact vote for the members of the Central Board representing his union free school district, his vote would be diluted in violation of the one man, one vote principle. However, as the Court of Appeals observed, the method of selection is neither classically appointive nor elective, and exploration is necessary to determine whether the result more closely resembles a *Sailors* or a *Hadley* board.

In *Sailors*, a two-tier system also operated. Each of the participating popularly elected school boards would send one delegate to a meeting to *elect* a county board of five members, who would not necessarily also be members of any of the constituent boards. 387 U.S. at 106–107, 87 S.Ct. at 1551. Interestingly, the word "elect" is used by the court notwithstanding the court's holding that the county board is appointive and therefore not within the one man, one vote principle. Plaintiff distinguishes *Sailors* because of the absence there of any requirement of local board membership as a condition precedent for election to the county board. He contends that here the Central Board is elected because a voter casting a ballot in his union free school district election is also voting in effect for a possible appointee from that board to the Central Board.

Section 1901 does not specifically require that appointees to the Central Board from a union free school district be selected from among the elected school board members, although such a requirement is applicable to an appointee from a common school district. However, the implication of such a requirement arises from the provision that they shall serve during their terms of office in the local boards which they represent.

Section 1901 provides:

Existing central high school districts are continued. Boards of education of such central high school districts heretofore established shall continue as constituted under the order of the commissioner of education. The number of their members shall be not less than five. There shall be at least one member of such a board from each common school district and at least two from each union free school district within the central high school district. The board of education of each union free school district in each such central high school district shall appoint the number of persons so designated by the commissioner to represent such district as members of the board of education of such central high school district. In each common school district having a sole trustee, such trustee shall represent such district as a member of the board of education of such central high school district. If a common school district have three trustees, such board of trustees shall designate one of its members to represent such district as a member of such board of education. The persons so designated shall be members of the board of education of

the central high school district during their terms of office as members of the board of education or as trustees of the districts respectively represented by them. Whenever a vacancy shall occur in the office of a member of the board of education of such central high school district, it shall be filled as above provided.

Even after giving consideration to this implication, we agree with the prior district court decision that "restricting the class of people who may be appointed does not change appointment to election." (E.D.N.Y. October 9, 1973, p. 11).

Plaintiff argues that the Central Board member is more elected than appointed because he is responsible to the electorate in that he may in effect be removed by the voters if they refuse to return him to his position as a board member of the union free school district. Even accepting the proposition that the voters thus have a power of removal, it does not follow that the power of removal is the test of whether a person is appointed or elected. Furthermore, although the voters' failure to reelect a board member of the union free school district who is also a member of the Central Board will terminate his service on the latter, it appears unlikely that the election would be held for this purpose. The legislative scheme contemplates that the power of removal will rest with the Commissioner of Education, who may remove a member of any school board, local or central, elected or appointed, for cause. Education Law § 1706. Moreover, the practice in union free school districts has not always been to have coterminous terms on the Central Board and the local boards. The President of the Central Board, who is also a member of the Board of Education of Union Free School District No. 25, Merrick (plaintiff's district), testified that when he was appointed to the Central Board, it was with the understanding that his term would be one year, although his term of office on the district board is for three years.

Once it is determined that the members of the Central Board are not selected by popular election, there is no need to determine whether they perform functions that may be better defined as "legislative" or "administrative." Such a distinction was mentioned in *Sailors,* 387 U.S. at 109–111, 87 S.Ct. at 1553, but was not pursued in *Hadley,* 397 U.S. at 55–56, 90 S.Ct. at 795. All the members of the *Hadley* court nevertheless approved of the *Sailors* decision, saying (397 U.S. at 58, 90 S.Ct. at 796):

> We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not "represent" the same number of people does not deny those people equal protection of the laws. Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); cf. Fortson v. Morris, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966).

See also People ex rel. Younger v. County of Eldorado, 5 Cal.3d 480, 96 Cal.Rptr. 553, 487 P.2d 1193, 1208–1209 (1971).

Plaintiff has not shown any reason for doubting the constitutionality of the two-tier method of selecting board members, and the court has found no such authority. In fact, plaintiff did not consider the method to be unconstitutional.

The emphasis we put on popular election as the test echoes the Supreme Court's recognition that the crucial factor in the application of Fourteenth Amendment considerations to any apportionment scheme is that the officials whose election is challenged must have been elected by popular vote. *Hadley, supra,* 397 U.S. at 54, 90 S.Ct. at 794. The point was further expounded in Wells v. Edwards, 409 U.S. 1095, 1098, 93 S.Ct. 904, 906, 34 L.Ed.2d 679, 681 (1973).

The Court of Appeals referred to the distinction between appointment and election in Education/Instruction, Inc. v. Moore, 503 F.2d 1187 (1974), saying

The district court did not find it necessary to determine whether members of the council are elected or appointed, since the council clearly does not exercise general governmental powers nor does it perform governmental functions.

We do note, however, that at least some members of the council do not automatically become council members by virtue of their election to office in their respective towns. The three additional members from Hartford, referred to above, are appointed by the city council under Special Act 73–79. And at least the members from West Hartford, Wethersfield and Glastonbury are selected by the respective town councils after the voters elect the councils themselves. (p. 1188, n.3).

That case dealt with an attack on the apportionment of a regional planning agency and a regional council of governments, which are comparable in their method of selection to the Central Board.

Further, within the Circuit, in Oliver v. Board of Education of the City of New York, 306 F.Supp. 1286 (S.D.N.Y. 1969), the district judge distinguished between the validity of an elective and appointive board selected by the same disproportionate voting districts, striking down only the elected board. Both the appointed and the elected boards were to perform similar functions. The controlling factor was the demands of the elective process.

It is of interest to note that the highest governing board of New York educational institutions, the Board of Regents, is an appointive board, which the New York Court of Appeals has held need not be apportioned among districts of equal population. Shanker v. Regents of the University of the State of New York, 19 N.Y.2d 951, 281 N.Y.S.2d 355, 228 N.E.2d 408 (1967), aff'g, 27 A.D.2d 84, 275 N.Y.S.2d 646 (3d Dept. 1966).

We find that Section 1901 of the New York Education Law provides for central high school district boards that are essentially appointive in nature and

therefore are not in conflict with the one man, one vote principle.

It is ORDERED that plaintiff's complaint be dismissed on the merits and that judgment enter accordingly.