Lewis C. BURTON et al.

v.

**WHITTIER VOCATIONAL REGIONAL SCHOOL DISTRICT.**

Civ. A. No. 76–4375–T.

United States District Court,
D. Massachusetts.

April 12, 1978.

David Berman, Medford, Mass., for plaintiffs.

Robert P. Rudolph, Georgetown, Mass., for defendant.

## OPINION

TAURO, District Judge.

Plaintiffs are residents of the City of Haverhill.[1] They seek injunctive relief barring defendant Whittier Vocational Regional School District (District), of which Haverhill is a constituent member, from continuing to select its Vocational District School Committee (Committee) in the manner dictated by Mass.Stat.1969, ch. 381,[2] contend-

---

1. They include the Mayor, George Katsaros; City Council members Theodore Pelosi, Jr., George Dekeon, Frank Emilio, Paul Rice, Jr., Warren Frye, Gene P. Grillo, Arthur Bower, Herbert Goecke, Jr. and Marjorie E. Goudreault; and School Committee members Patrick Minichiello, Albert Whitaker, Joseph Florent, George Katsaros, Manuel Epstein, Dorothy Court and George Forte. The City of Haverhill is also named as a plaintiff, as are the following residents of Haverhill named as indi-

viduals: Lewis Burton, Raymond DeMatteo, D. Harold Coughlin and J. Bradford Brooks.

2. In relevant part, the statute states:

Section 1. The cities of Haverhill and Newburyport and the towns of Amesbury, Georgetown, Groveland, Ipswich, Newbury, Rowley, Salisbury and West Newbury are hereby erected and constituted a vocational regional school district pursuant to the provisions of chapter one hundred and fifty-six of

ing that its provisions deprive them of the equal protection of the laws.[3]

Defendants have moved to dismiss for failure to state a cause of action.

## I.

The District is composed of eleven towns and cities. Its affairs are governed by the Committee, which consists of two representatives each from Haverhill and Newburyport and one representative from each of the other communities.[4] Based on census figures, the total population of the District is 111,433 [5]. Haverhill, with 45,643 residents, comprises about 41% of the District's population. Under the challenged statutory formula, however, Haverhill is entitled to only two of the thirteen places on the Committee, or about 15% of the representation.

## II.

Plaintiffs argue that the challenged statute imposes a Committee membership that is disproportionate to District population ratios, and that it, therefore, violates the "one man, one vote" principle. It is true that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506 (1964). As the Court commented in *Gray v. Sanders,*

> Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are

to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be in that geographical unit. This is required by the Equal Protection Clause of the Fourteenth Amendment.

372 U.S. 368, 379, 83 S.Ct. 801, 808, 9 L.Ed.2d 821 (1963). These long accepted principles, however, are inapplicable to the facts of this case.

Committee representatives are not elected. They are appointed by the elected school committees [6] of the cities and towns. Appointees to the Committee need not be members of a local school committee.

Plaintiffs attempt to characterize this system as one that is basically elective. The Supreme Court's decision in *Sailors v. Board of Education,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), is precedent to the contrary. There, voters of Kent County, Michigan attacked the system for selecting the County School Board. Locally elected school committees sent delegates to a biennial meeting. Those delegates then elected a county board of five members (not necessarily members of the local boards). Although the system led to a malapportioned board, the Court affirmed dismissal of the complaint. Describing the selection system as "basically appointive, rather than elective," 387 U.S. at 109, 87 S.Ct. at 1553, the Court held that,

> [s]ince the choice of members of the county school board did not involve an election and since none was required for these

the acts of nineteen hundred and sixty-seven and the agreement signed by the members of the regional school district planning board . . . and dated the twenty-sixth day of July, nineteen hundred and sixty-seven.

3. The action is brought pursuant to 42 U.S.C. § 1983.

4. This system is established by an agreement entered into by the member communities. Mass.Stat.1969, ch. 381, *see* n. 2 *supra*, gives legal effect to the agreement.

5. The members and their populations (as reported by the 1970 census) are:

| Member | Population |
|---|---|
| Haverhill | 45,643 |
| Newburyport | 15,685 |
| Amesbury | 11,333 |
| Georgetown | 5,271 |
| Groveland | 5,325 |
| Ipswich | 10,853 |
| Merrimac | 4,184 |
| Newbury | 3,755 |
| Rowley | 3,006 |
| Salisbury | 4,150 |
| West Newbury | 2,228 |

6. Mass.Gen.Laws ch. 41, § 1.

nonlegislative offices, the principle of "one man, one vote" has no relevancy. 387 U.S. at 111, 87 S.Ct. at 1553.

The Committee selection system at issue here is fundamentally indistinguishable from that in *Sailors*. Locally elected school committees appoint representatives, not necessarily members of the local committees, to the Committee. The system is appointive, not elective.[7]

In *Sailors*, the Court viewed the functions of the County School Board as "essentially administrative," and left open the question "whether a State may constitute a local legislative body through the appointive rather than the elective process." 387 U.S. at 109–110, 87 S.Ct. at 1553. Plaintiffs attempt to distinguish *Sailors* by characterizing the Committee as a legislative body, because it "has total power to set its own budget and require member communities to contribute accordingly." This argument fails for two reasons. First, recent case law casts considerable doubt on the continued vitality of the *Sailors* distinction between administrative and legislative bodies.[8] Second, even if the distinction survives, the Committee here is no more "legislative" in character than the County School Board in *Sailors*, which had the power to levy taxes.[9]

### III.

Plaintiffs also argue that they are deprived of equal protection because some other school districts "indistinguishable from the Whittier Vocational Regional School District except by geography" are treated differently under state law. Certain of these districts, plaintiffs allege, are permitted by state law to elect their regional vocational committees by popular vote. They further allege that other districts that have appointive systems nevertheless have proportional representation on the committees, in contrast to the Whittier system.

In *Ortiz v. Hernandez Colon*, 385 F.Supp. 111 (D.P.R.1974), *vacated and remanded for consideration of mootness*, 429 U.S. 1031, 97 S.Ct. 721, 50 L.Ed.2d 742 (1977), a three-judge court confronted a similar argument. San Juan residents challenged the constitutionality of a statute of the Commonwealth of Puerto Rico that authorized the Governor to appoint five assemblymen to the San Juan Municipal Assembly. The five appointees would serve along with twelve assemblymen elected by San Juan voters. The court held the law unconstitutional on traditional "one man, one vote" grounds, finding that it diluted the votes of certain San Juan voters relative to the votes of other San Juan voters. But the court, in an opinion by Judge Coffin, also commented:

> In the present case, plaintiffs contend that the legislative scheme for constituting San Juan's Municipal Assembly results in an unconstitutional deprivation of equal protection in that residents of San

---

**7.** Any possible doubt on this issue is settled by *Rosenthal v. Board of Education*, 385 F.Supp. 223 (E.D.N.Y.1974), *aff'd*, 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975). There, local school board membership was a condition precedent to membership on the district board, thus rendering the system arguably more elective than the system at issue in *Sailors*. But the court held nevertheless that "restricting the class of people who may be appointed does not change appointment to election." 385 F.Supp. 223 at 226. The Supreme Court affirmed without opinion. 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975).

**8.** In *Hadley v. Junior College District*, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), which followed *Sailors*, the Court commented:

> It has also been urged that we distinguish for apportionment purposes between elections for "legislative" officials and those for "ad-

ministrative" officers. Such a suggestion would leave courts with an equally unmanageable principle since governmental activities "cannot easily be classified in the neat categories favored by civics texts . . . ." 397 U.S. at 55–56, 90 S.Ct. at 795 (citation omitted).

In *Rosenthal v. Board of Education*, 385 F.Supp. 223 (E.D.N.Y.1974), *aff'd*, 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975), *see supra*, n. 7, the court assumed that the administrative/legislative distinction of *Sailors* was no longer relevant. *See also Township of Franklin v. Board of Education of the Hunterdon Regional High School*, 74 N.J. 345, 378 A.2d 218 (1977), *aff'd*, 434 U.S. 1007, 98 S.Ct. 715, 54 L.Ed.2d 749 (1978).

**9.** *Sailors v. Board of Education*, 387 U.S. 105, 110, n. 7, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967).

Juan are denied "one person, one vote." If, by this, plaintiffs mean that the votes of residents of San Juan, taken as a whole, are "diluted" relative to the votes of residents of other Puerto Rican cities in their own municipal elections, we think their contention is unfounded. *To argue that voting strength is "diluted", under equal protection analysis, implies that one group of citizens has more voting power than another group within the same constituent assembly. It is no violation of equal protection that citizens of Puerto Rico who live in cities outside San Juan may have more direct control over their municipal assemblies than residents of San Juan have over their own.* A state has wide authority to classify cities differently, and institute different voting schemes within each.

385 F.Supp. at 114–115 (emphasis added).

Judge Coffin's comment is a modern application of the principle established in *Missouri v. Lewis*, 101 U.S. 22, 31–32, 25 L.Ed. 989 (1879), that "diversities which are allowable in different States are allowable in different parts of the same State." Only through tolerance of such diversity can states establish the "numerous combinations of old and new devices" and the "many innovations" [10] necessary to meet changing conditions of local government.

Defendant's motion to dismiss is allowed.[11] An order has issued.

---

10. *Sailors v. Board of Education*, 387 U.S. 105, 110, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650 (1967).

11. Having allowed the motion to dismiss, it is unnecessary for the court to reach the other grounds asserted by defendant in support of its motion.