(No. 50522.-

ROBERT EASTERN, Appellee, v. VIC CANTY *et al.*—
(Nelson Hagnauer, Appellant.)

*Opinion filed May 18, 1979.*

GOLDENHERSH, C.J., took no part.

Donald L. Smith, Assistant State's Attorney, of Alton (Al J. Pranaitis, of counsel), for appellant.

Starnes & Nelson, of Belleville, for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The plaintiff, Robert Eastern, filed a complaint in the circuit court of St. Clair County for declaratory and injunctive relief against the defendants, Vic Canty, chairman of the county board of St. Clair County, Nelson Hagnauer, chairman of the county board of Madison County, and the Metro-East Sanitary District, a public corporation organized under the Metro-East Sanitary District Act of 1974 (Ill. Rev. Stat. 1977, ch. 42, pars. 501—1 through 505—5).

The trial court denied motions to dismiss made by Hagnauer and the district, and on February 2, 1978, it granted a motion by the plaintiff for summary judgment, holding that section 3—1 of the Act (Ill. Rev. Stat. 1977, ch. 42, par. 503—1) violated the equal protection clause of the Federal Constitution. In his complaint the plaintiff sued not only as an individual but as a representative of the commissioners of the district and also as a representative of the residents, voters, and taxpayers of that portion of the district located in St. Clair County. The trial court did not determine the question of the plaintiff's standing to sue in a representative capacity, but rendered its judgment only on the basis of the plaintiff's right to sue as

an individual. The court also granted a permanent injunction preventing the defendants from removing the plaintiff from office and replacing him with a commissioner appointed by defendant Hagnauer or any successor to the latter. Hagnauer appealed to this court under Rule 302(a) (58 Ill. 2d R. 302(a)).

We consider first whether the circuit court had jurisdiction to enter its judgment order of February 2, 1978, and an earlier order of December 5, 1977, which denied Hagnauer's motion to dismiss and granted a temporary injunction. The jurisdictional question arises because of Hagnauer's removal or attempted removal of this case to the United States District Court for the Southern District of Illinois. Although neither party refers to this matter, the record on appeal contains a copy of a verified petition for removal filed in the district court on September 30, 1977. A copy was also filed on the same date with the clerk of the circuit court. The record contains no further reference to the removal. Though the parties do not discuss the matter, it is our obligation to take notice of matters such as this which go to the jurisdiction of the circuit court. *Cf. People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 105.

Section 1441(a) of the Federal judicial code (28 U.S.C. sec. 1441(a) (1976)) makes any case involving a Federal question removable. Section 1446(d) (28 U.S.C. sec. 1446(d) (1976)) requires that a bond be posted when a petition for removal is filed, and section 1446(e) (28 U.S.C.A. sec. 1446(e) (Supp. 1978)) provides as follows:

> "Promptly after the filing of such petition for the removal of a civil action and bond the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the petition with the clerk of such State court, which shall effect the removal and the State court *shall proceed no further unless and until the case is remanded.*" (Emphasis added.)

It is universally held that when a petition for removal has been filed in Federal district court and the other acts specified by section 1446(e) have been performed, the State court loses jurisdiction to proceed further until the case is remanded. Even if the basis of the district court's remand is that the case was not removable, no action taken by the State court in the interim can stand. While the point has not previously arisen in this court, our appellate court has correctly, we consider, so held. *People v. Martin-Trigona* (1975), 28 Ill. App. 3d 605; *People v. Martin-Trigona* (1976), 36 Ill. App. 3d 482. See also *South Carolina v. Moore* (4th Cir. 1971), 447 F.2d 1067; *United States ex rel. Echevarria v. Silberglitt* (2d Cir. 1971), 441 F.2d 225; *State v. Francis* (1964), 261 N.C. 358, 134 S.E.2d 681; *Schuchman v. State* (1968), 250 Ind. 408, 236 N.E.2d 830, all cited in the first of the *Martin-Trigona* cases.

The same conclusion has been reached in numerous other decisions. See *Hopson v. North American Ins. Co.* (1951), 71 Idaho 461, 233 P.2d 799; *Bean v. Clark* (Miss. 1956), 85 So. 2d 588; *State ex rel. Gremillion v. NAACP* (La. 1956), 90 So. 2d 884; *Adair Pipeline Co. v. Pipeliners Local Union No. 798* (S.D. Tex. 1962), 203 F. Supp. 434, *aff'd* (5th Cir. 1963), 325 F.2d 206; *Fossey v. State* (1970), 254 Ind. 173, 258 N.E.2d 616; *State v. Price* (1972), 15 N.C. App. 599, 600-01, 190 S.E.2d 403, 404; *Davis v. Davis* (S.C. 1976), 229 S.E.2d 847; *City of Lake Charles v. Bell* (La. 1977), 347 So. 2d 494, 497-98; *Cavanagh v. Cavanagh* (R.I. 1977), 380 A.2d 964; *People v. Wynn* (1977), 73 Mich. App. 713, 253 N.W.2d 123; Annot., 38 A.L.R. Fed. 824 (1978); 14 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure sec. 3737 (1976).

Under section 1446(e) the filing of a petition for removal must be followed promptly by written notice to all adverse parties and the filing of a copy of the petition

in the State court. As noted previously, no question can be raised here as to the latter requirement. With respect to the requirement of prompt written notice to the plaintiff, however, the petition for removal does not allege, nor does the record show, the giving of such notice, and language in *Crown Construction Co. v. Newfoundland American Insurance Co.* (1968), 429 Pa. 119, 239 A.2d 452, and other decisions suggests that, like failure to file a copy of the petition in State court, lack of prompt notice to adverse parties also amounts to a failure to perfect removal. (See 429 Pa. 119, 125, 239 A.2d 452, 455; *Dorsey v. State* (Ind. App. 1976), 357 N.E.2d 280; *State v. Stewart* (1973), 21 Ariz. App. 123, 124, 516 P.2d 332, 333; *Donlan v. F. H. McGraw & Co.* (E.D.N.Y. 1948), 81 F. Supp. 599, 600; *Beleos v. Life and Casualty Insurance Co.* (E.D.S.C. 1956), 161 F. Supp. 627, 628-29; *Berberian v. Gibney* (1st Cir. 1975), 514 F.2d 790, 792-93.) Because of subsequent action taken by the district court in this case it is unnecessary to decide that question, however.

Upon his inquiry the clerk of this court was advised that on November 4, 1977, the district court entered an order dismissing the petition for removal. The basis of the order, a copy of which we have examined, was not that prompt notice of the removal was wanting, but that venue was improper for the reason that St. Clair County is located in the Eastern District of Illinois, not the Southern District. See 28 U.S.C. sec. 93(c) (1976).

Section 1447(c) of the judicial code (28 U.S.C. sec. 1447(c) (1976)) provides:

> "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs. A certified copy of the order of remand shall be mailed by its clerk to the clerk of the State court. The State court may thereupon proceed with such case."

Had the order of November 4 remanded the case, the circuit court would thereby have reacquired jurisdiction. *Brown v. State Farm Mutual Automobile Insurance Co.* (Tex. Civ. App. 1969), 449 S.W.2d 93; *Davis v. Davis* (S.C. 1976), 229 S.E.2d 847, 848.

While the order here did not remand the case, that was unnecessary, as it was based on a determination that the filing of the defective petition had not effected a removal, and the order served to terminate the proceedings in the district court. In *In re MacNeil Bros. Co.* (1st Cir. 1958), 259 F.2d 386, a purported petition for removal had been filed by one who was not a defendant, and the district court dismissed the petition without remanding the case. In commenting upon that disposition of the case the court of appeals observed:

"[T]he effect of the order of dismissal of the petition for removal was not to dismiss the original complaint which the District Court considered as never having been removed from the jurisdiction of the State court, but to leave the said case pending on the docket of the [State court]; and so far as we can see under the peculiar circumstances, that Court will not have to wait for a technical order of 'remand' before proceeding to exercise its jurisdiction to dispose of the case." 259 F.2d 386, 389.

We think this observation is applicable to the "peculiar circumstances" of the present case. In this connection we note that the clerk of the district court did not mail to the clerk of the circuit court a copy of the order of November 4. Even if that order had been cast in terms of a remand, however, this omission, for the reasons given in *Brown v. State Farm Mutual Automobile Insurance Co.* (Tex. Civ. App. 1969), 449 S.W.2d 93, 97-98, would not have been significant. We conclude, therefore, that the circuit court had jurisdiction to decide this case.

When a matter pending in the courts of this State is also the subject of litigation in the Federal courts system, questions may arise as to whether the State court has jurisdiction to render a judgment on the merits and whether such a judgment would be dispositive of the controversy. See, *e.g.*, *28 East Jackson Enterprises, Inc. v. Rosewell* (1976), 65 Ill. 2d 420; 551 F.2d 1093 (7th Cir. 1977), *cert. denied* (1977), 434 U.S. 835, 54 L. Ed. 2d 96, 98 S. Ct. 123; *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, *cert. denied* (1975), 420 U.S. 975, 43 L. Ed. 2d 655, 95 S. Ct. 1398; *Lektro-Vend Corp. v. Vendo Co.* (N.D. Ill. 1975), 403 F. Supp. 527, *aff'd* (1976), 545 F.2d 1050, *rev'd* (1977), 433 U.S. 623, 53 L. Ed. 2d 1009, 97 S. Ct. 2881.

Expedition of a decision on the merits, avoidance of uncertainty and of possible conflict with the Federal courts, economy of judicial administration, and a sense of professional obligation all dictate that counsel should bring to the attention of our courts any litigation pending in the Federal courts over the same matter, together with their views on any jurisdictional question which may be presented.

Turning to the merits of the case, section 1–2 of the Metro-East Sanitary District Act of 1974 (Ill. Rev. Stat. 1977, ch. 42, par. 501–2) provides that the voters of a sanitary district organized under a statute of 1907, entitled "An Act to create sanitary districts in certain localities, to drain and protect the same from overflow for sanitary purposes and to provide for sewage disposal" (Ill. Rev. Stat. 1977, ch. 42, par. 247 *et seq.*), may dissolve the district pursuant to sections 29 through 29.3 of that act as amended in 1974 (Ill. Rev. Stat. 1977, ch. 42, pars. 274.1 through 274.4) and create a new district having the same boundaries as the old.

Section 1 of the 1907 act (Ill. Rev. Stat. 1977, ch. 42, par. 247) authorized the incorporation as a sanitary

district under that act of any contiguous area lying within the limits of two counties. The present Metro-East Sanitary District, which includes portions, but less than all, of the County of St. Clair and of the County of Madison, appears to be the successor to a sanitary district which had been organized under the 1907 act. See *People ex rel. East Side Levee & Sanitary District v. Madison County Levee & Sanitary District* (1973), 54 Ill. 2d 442, 444.

Section 3—1 of the 1974 act provides in its pertinent part as follows:

"The district shall be governed by a Board of Commissioners, consisting of 5 commissioners. Three of the commissioners shall be residents of that portion of the district in the county having the greater equalized assessed valuation of the district, and 2 shall be residents of that portion of the district in the other county. The appointment of commissioners from each county shall be made by the chairman of the county board of that county with the advice and consent of the county board, except that in the case of a home rule county as defined by Article VII, Section 6, of the Constitution of 1970 the appointment shall be made by the chief executive officer of the county with the advice and consent of the county board.
\* \* \*
If the relative equalized assessed valuation changes so that the position of the 2 counties with respect to majority and minority representation on the board is reversed, the next appointment that would otherwise have been made by the appointing authority for the county formerly entitled to 3 directors shall be made by the appointing authority for the other county." Ill. Rev. Stat. 1977, ch. 42, par. 503—1.

The circuit court held that the formula for the composition of the board of commissioners prescribed by the second sentence of the first paragraph of the section called for a comparison of assessed valuation between the portion of each county lying within the district, not between each county as a whole. The plaintiff concurs in this view, and we agree that such a construction is required

for a meaningful reading of the section.

The complaint alleged that the plaintiff resided in that portion of the district encompassed by St. Clair County, that his term as commissioner would expire in November 1977, and that under the last paragraph of section 3—1 his position was required to be filled by a person nominated by defendant Hagnauer, acting in his capacity as chairman of the county board of Madison County, from among residents of the portion of the district lying in the latter county. The correctness of that conclusion necessarily rests on the premise that the equalized assessed valuation of property located in the Madison County portion of the district now exceeded that of property located in the St. Clair County portion, a premise which was admitted by Hagnauer in his brief and on oral argument.

The complaint also alleged that "a substantially greater percentage of the population of the entire district is located in St. Clair County." This allegation was denied by Hagnauer in his answer. The plaintiff requested the court to take judicial notice of the population of St. Clair County and of Madison County, as shown by the 1970 census. These figures showed that the population of the former county exceeded that of the latter by some 34,000. No request was made, however, that judicial notice be taken that the population of the portion of St. Clair County included in the district was greater than that of Madison County, and the plaintiff filed no affidavit to that effect. Hagnauer contends, therefore, that there was a genuine issue of material fact which precluded the entry of summary judgment.

On that point the trial judge stated, "There appears to be no disagreement between the parties on the basic facts that the portion of St. Clair County contained within the Metro-East Sanitary District has a greater population than the Madison County portion, but that Madison County has the greater equalized assessed valuation."

We do not understand Hagnauer to contend seriously that the population of the St. Clair County portion of the district is not the greater of the two. Since the plaintiff's contention is simply that the composition of the board, under the mandate of section 3—1, was not based on relative population, the specific figures would not be significant, and the case could therefore be disposed of without a trial of that issue.

We thus arrive at a consideration of the circuit court's holding that section 3—1 violates the equal protection clause of the Federal Constitution. The criterion utilized by the court in reaching this result was stated by it in the following language:

> "If a special purpose district, whether appointed or elected, has a general effect upon its population as a whole rather than a specific impact upon an identifiable group within its populace, the allocation of representation on the district's governing board must reflect the distribution of population, in the district's included governmental bodies in this particular case, or be in violation of the equal protection clause."

The circuit court was also of the opinion that to make majority control of the board of commissioners depend on the amount of equalized assessed valuation of property was to adopt a standard bearing no "rational relationship" to the purposes of the district.

In our view, the circuit court's decision did not conform to the applicable decisions of the Supreme Court of the United States, and we accordingly reverse the judgment below and remand the cause with directions to dismiss the complaint for failure to state a cause of action.

The principle of the one-man, one-vote doctrine, as exemplified by *Reynolds v. Sims* (1964), 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362, and the decisions stemming from it, is that when a public office must be filled by election, whether because of a constitutional mandate or a legislative enactment, the method used shall be reasonably

designed to achieve the objective that the "vote of any citizen is approximately equal in weight to that of any other citizen in the State." (377 U.S. 533, 579, 12 L. Ed. 2d 506, 537, 84 S. Ct. 1362, 1390.) From this it follows that when the determinative vote is to be cast by electoral districts these must be "as nearly of equal population as is practicable." 377 U.S. 533, 577, 12 L. Ed. 2d 506, 536, 84 S. Ct. 1362, 1390.

The plaintiff regards the decision of the present case as hinging on the extent to which the principle of *Reynolds v. Sims* applies to the selection of persons who are officeholders in a local governmental entity rather than being members of the State legislature itself. Resolution of that question, in turn, is said to require an analysis of the powers of the particular entity involved in terms of their impact upon its residents. What we see as of first importance, however, is that the district's commissioners are not elected but appointed.

At no time, so far as we can ascertain, has the United States Supreme Court held that the Federal Constitution requires all governmental offices to be filled by election. Nor has the court held that in filling appointive offices each appointee must be selected on a basis which satisfies the one-man, one-vote requirement which would apply to elective offices. On the contrary, the constitutional permissibility of a nonelective method of selection was recognized in *Sailors v. Board of Education* (1967), 387 U.S. 105, 18 L. Ed. 2d 650, 87 S. Ct. 1549, and in *Fortson v. Morris* (1966), 385 U.S. 231, 17 L. Ed. 2d 330, 87 S. Ct. 446, each decided after *Reynolds v. Sims*, and not repudiated by later opinions of the court.

*Sailors* related to the selection of the members of a county school board. The five members of the board were elected by the vote of delegates from local school districts. Each delegate was selected by his local school board, and each member of the latter was chosen by popular vote

among the qualified voters of the local district. Among the important powers of the county board was that of transferring areas from one local district to another. Since the local districts varied widely in population, it was contended that the one-man, one-vote principle was violated in the composition of the county board.

The court rejected that contention by a unanimous vote. A majority characterized the procedure as "basically appointive rather than elective." (387 U.S. 105, 109, 18 L. Ed. 2d 650, 654, 87 S. Ct. 1549, 1553.) It added: "Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy." 387 U.S. 105, 111, 18 L. Ed. 2d 650, 655, 87 S. Ct. 1549, 1553.

In *Fortson* the court upheld, against a one-man, one-vote challenge, a provision of the Georgia Constitution whereby if no candidate in an election for governor received a majority of the vote the legislature could select the winner from the two candidates who had received the highest number of votes. In the course of its opinion in *Fortson* the court rejected the contention that a State was compelled "to elect its governors or any other state officers or agents through elections of the people rather than through selections by appointment or elections by the State Assembly." 385 U.S. 231, 233, 17 L. Ed. 2d 330, 332, 87 S. Ct. 446, 448.

*Avery v. Midland County* (1968), 390 U.S. 474, 20 L. Ed. 2d 45, 88 S. Ct. 1114, and *Hadley v. Junior College District* (1970), 397 U.S. 50, 25 L. Ed. 2d 45, 90 S. Ct. 791, relied on by the circuit court and by the plaintiff, dealt with elected officials. These decisions extended the doctrine of *Reynolds v. Sims* to the election of officers of local agencies: in *Avery* a unit of local government having general powers (390 U.S. 474, 483, 485, 20 L. Ed. 2d 45, 52-53, 88 S. Ct. 1114, 1119-21) and in *Hadley* a local

college district (397 U.S. 50, 53-54, 25 L. Ed. 2d 45, 49, 90 S. Ct. 791, 794). They left undisturbed, however, *Sailors'* exclusion of appointive officials from the one-man, one-vote rule. Indeed, *Hadley* broadened that exclusion: In *Sailors* the court had limited its decision to local bodies whose functions were essentially "administrative" rather than "legislative," whereas in *Hadley* the court rejected a suggested distinction between the elections of "legislative" officials and those of "administrative" officials. Such a distinction, the court stated, offered what would be an "unmanageable principle" of decision. (397 U.S. 50, 55-56, 25 L. Ed. 2d 45, 50, 90 S. Ct. 791, 796.) And the court, citing *Sailors* and *Fortson,* further stated:

> "We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not "represent" the same number of people does not deny those people equal protection of the laws." 397 U.S. 50, 58, 25 L. Ed. 2d 45, 52, 90 S. Ct. 791, 796.

The continuing vitality of *Sailors* is also shown by *Rosenthal v. Board of Education* (E.D.N.Y. 1974), 385 F. Supp. 223 (three-judge court), *aff'd mem.* (1975), 420 U.S. 985, 43 L. Ed. 2d 667, 95 S. Ct. 1418.

*Rosenthal* involved the selection under a New York law of the eight members of the board of education of a central high school district which included four local school districts, referred to by the court as "union free school districts." The members of the board of education of each of the local districts, whose population varied in number, were elected by the qualified voters in that district. The members of each local board then appointed two members of the central district board. The district court assumed for purposes of decision that an appointee to the central board must be a member of a local board.

Even on this assumption, however, the court concluded that " 'restricting the class ˘of people who may be appointed does not change appointment to election.' " (385 F. Supp. 223, 226.) That being so, the court, citing *Hadley,* held it was not required that each appointee "represent" the same number of people, and it also was unnecessary to determine whether the functions of the central board should be characterized as "administrative" or "legislative." 385 F. Supp. 223, 226.

A like result was reached in *Oaks v. Board of Trustees* (N.D. Miss. 1974), 385 F. Supp. 392, and *Burton v. Whittier Vocational Regional School District* (D. Mass. 1978), 449 F. Supp. 37. (See also *Egan v. Wisconsin State Board of Vocational, Technical & Adult Education* (E.D. Wis. 1971), 332 F. Supp. 964, 968-69.) In *Oaks* each of the trustees of a junior college district was appointed by the board of supervisors of one of the several constituent counties in the district, and the number of trustees to which a district was entitled was not based on its relative population. In *Burton* a regional school district was composed of 11 towns and cities. Its 13-member governing body was formed of two representatives from each of the two largest communities and one from each of the others. These representatives were not elected but were appointed by the locally elected school committees of the constituent governmental entities. In both *Oaks* and *Burton,* the district court held that under the applicable decisions of the Supreme Court there was no violation of equal protection. Although in *Bianchi v. Griffing* (2d Cir. 1968), 393 F.2d 457, the court struck down a statute under which the county board of supervisors consisted of the elected supervisor of each of the 10 towns composing the county, whose population varied widely, in that case it was the town supervisors themselves who sat on the board, however, rather than persons appointed by the local authorities, as in *Sailors, Rosenthal,* and the other cases

referred to above. *Cf. Abate v. Mundt* (1971), 403 U.S. 182, 29 L. Ed. 2d 399, 91 S. Ct. 1904.

*Salyer Land Co. v. Tulare Lake Basin Water Storage District* (1973), 410 U.S. 719, 35 L. Ed. 2d 659, 93 S. Ct. 1224, also dealt with elective offices. It is pertinent here, nevertheless, because of its holding that the district there involved fell within an exception to the one-man, one-vote requirement for special-purpose districts, an exception which had been foreshadowed in *Avery* and *Hadley*. See *Avery v. Midland County* (1968), 390 U.S. 474, 483-84, 20 L. Ed. 2d 45, 52-53, 88 S. Ct. 1114, 1119-20; *Hadley v. Junior College District* (1970), 397 U.S. 50, 56, 25 L. Ed. 2d 45, 51, 90 S. Ct. 791, 795.

The district in *Salyer* was organized under California law for the purpose of building and operating facilities for the storage and distribution of water. The costs of these facilities were assessed against agricultural land located in the district according to the benefits received. The district was governed by a board of directors, each of whom was elected from one of the areas into which the district was divided. The equal protection question presented by *Salyer* related to voter qualification, for under the statute the franchise was limited to landowners, including landowners who were not residents, while residents who were not landowners, even if they were tenants, were excluded. A landowner's vote, moreover, was apportioned on the basis of the assessed value of his land. The court concluded that the special limited purpose of the district and "the disproportionate effect of its activities on landowners as a group" excluded it from the application of *Reynolds v. Sims*. (See *Salyer Land Co. v. Tulare Lake Basin Water Storage District* (1973), 410 U.S. 719, 728, 35 L. Ed. 2d 659, 666, 93 S. Ct. 1224, 1229.) *A fortiori* a district of such character would not be subjected to a requirement of "representation" for appointive offices.

The inapplicability of *Reynolds v. Sims* to appointive

offices was touched upon by this court in *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, *appeal dismissed* (1972), 406 U.S. 965, 32 L. Ed. 2d 663, 92 S. Ct. 2412. That case involved the validity of sections 7 and 12 of the Urban Transportation District Act (Ill. Rev. Stat. 1969, ch. 111 2/3, pars. 507, 512). Under those sections the board of trustees of a transportation district was empowered to levy taxes upon real estate, and the trustees were appointed. It was contended that this arrangement violated the equal protection clause. In rejecting that contention the court, citing *Sailors* and *Hadley,* held that with respect to appointed officials there was no require-ment that each official "represent" the same number of people. 50 Ill. 2d 72, 81-82.

In *People ex rel. Younger v. County of Eldorado* (1971), 5 Cal. 3d 480, 487 P.2d 1193, 96 Cal. Rptr. 553, the California Supreme Court also accepted the position that the equal protection doctrine was limited to elective officials. There the States of California and Nevada had established a bi-State regional planning agency governed by a board of 10 members. Five of the members were from California, two of whose counties lay within the area governed by the agency. The county supervisors of each county appointed one person as a member of the board, even though the counties were unequal in population. In rejecting an equal protection challenge the court stated:

"We think the true meaning of *Sailors* and *Hadley* is that the legislative or administrative nature of the activities performed by an officer is irrelevant; if the officer is elected, 'one person, one vote' applies. If he is appointed, the principle does not apply.

The members of the Agency's governing board are appointed; consequently, the fact that they do not 'represent' equal numbers of people does not deny those who are 'underrepresented'

equal protection of the laws." 5 Cal. 3d 480, 505-06, 487 P.2d 1193, 1209-10, 96 Cal. Rptr. 553, 569-70.

The same result was reached in litigation concerning the planning agency which arose in the Nevada courts. *State ex rel. List v. County of Douglas* (1974), 90 Nev. 272, 524 P.2d 1271, 1276-77.

The decisions discussed above require reversal of the judgment entered below for the plaintiff. Although the immediate impact of the judgment is simply to extend the plaintiff's term on the board of commissioners, its effect is more far reaching. The gist of the complaint is that since section 3—1 of the Act permits only two members of the board to be residents of the St. Clair County portion of the district, it does not give the residents "fair and adequate representation." The plaintiff asserts in his brief that section 3—1 discriminates against residents of St. Clair County on the basis of the race and economic status of many of the residents. As stated by the plaintiff, the section vests control of the district in a "white minority of wealthy persons situated in Madison County," with the result that "[t]he Madison County portion with more wealth, but fewer people, would be able to out-vote the St. Clair County portion at the presentation of every issue."

The supposed discrimination based on wealth of which plaintiff complains presumably refers to the differentiation between the two portions of the district on the basis of the equalized assessed valuation of property. The plaintiff fails to show that the value of land measures the wealth of its owner, however. It must also be noted that we do not deal here with an attempt to make the ownership of property a condition for voting, as in *Kramer v. Union Free School District No. 15* (1969), 395 U.S. 621, 23 L. Ed. 2d 583, 89 S. Ct. 1886, and *Cipriano v. City of Houma* (1969), 395 U.S. 701, 23 L. Ed. 2d 647, 89 S. Ct. 1897, or of holding office, as in *Turner v. Fouche* (1970), 396 U.S. 346, 24 L. Ed. 2d 567, 90 S. Ct. 532.

As the cases previously discussed show, there is no constitutional requirement that the appointed governing body of a district be so constituted that a majority of its members "represent" the more populous of the areas which compose the district. Indeed, when an officeholder need not be elected at all, it seems questionable to speak of him as a "representative."

Even in the context of elective offices no requirement of "representation" in this special sense has been imposed. In *Dusch v. Davis* (1967), 387 U.S. 112, 18 L. Ed. 2d 656, 87 S. Ct. 1554, a consolidated city contained seven boroughs, each of which corresponded with the boundaries of a previous governmental entity. The seven members of the city council were elected at large, but each of them was required to reside in one of the seven boroughs. Notwithstanding substantial differences in the population of the boroughs, the court held that no one-man, one-vote requirement was violated. *Cf. Clark County v. City of Las Vegas* (1978), 94 Nev. 74, 77, 574 P.2d 1013, 1015, where the Supreme Court of Nevada held that any right of a constituent unit to representation on a consolidated government applied if the governing body was elected but not when it was appointed.

Hagnauer also contends that the district is in any event exempt from the one-man, one-vote rule because it is a special-purpose unit of government. In this connection Hagnauer calls our attention to *Citizens to Save Our Land v. McKee Creek Watershed Conservancy District* (1976), 37 Ill. App. 3d 935, where the Appellate Court for the Fourth District upheld the validity of the River Conservancy Districts Act (Ill. Rev. Stat. 1965, ch. 42, par. 383 *et seq.*). The appellate court's decision was based on two separate considerations, that the conservancy district was a special-purpose unit of government, and that the functions performed by its trustees were "essentially nonlegislative." 37 Ill. App. 3d 935, 941.

As we have previously noted, the Supreme Court has

rejected a distinction between legislative and administrative functions as being significant in this context (*Hadley v. Junior College District* (1970), 397 U.S. 50, 55-56, 25 L. Ed. 2d 45, 50, 90 S. Ct. 791, 794-95), and that criterion was not resurrected by *Salyer.* We agree with the appellate court, however, that the conservancy district, so far as its purposes are concerned, satisfies the standard stated in *Salyer.* The same may be said of the district presently involved. While the latter does possess some "typical governmental powers," such as the power of eminent domain, the power to levy property taxes, and the power to issue bonds (Ill. Rev. Stat. 1977, ch. 42, pars. 502–7, 505–1, 505–2), these powers exist as means of fulfilling the district's basic purposes of protecting against the overflow of water and disposing of water, sewage, and other drainage (Ill. Rev. Stat. 1977, ch. 42, pars. 502–2, 502–3). The district does not provide general public services such as schools, housing, transportation, and the like. *Cf. Salyer Land Co. v. Tulare Lake Basin Water Storage District* (1973), 410 U.S. 719, 728-29, 35 L. Ed. 2d 659, 666-67, 93 S. Ct. 1224, 1229-30.

Whether the district meets the other test referred to in *Salyer* that there be a "disproportionate effect of its activities" on landowners or some other identifiable group cannot be determined on the basis of the record here. This case was decided on a motion for summary judgment, and that motion was not supported by affidavits. The circuit court, unlike the district court in *Salyer* (see 342 F. Supp. 144, 145), thus did not have before it any delineation of the relevant facts, such as the location of the district's facilities and of the area which these serve. Because of the conclusion which we have reached earlier in this opinion it is unnecessary to pursue further the question of the district's status as a special-purpose district.

The judgment of the circuit court is accordingly reversed and the cause is remanded with directions to dismiss the complaint.

*Reversed and remanded,*
*with directions.*

MR. CHIEF JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.