**D. Patrick WINBURN, Plaintiff,**

v.

**BENNINGTON–RUTLAND SUPERVISORY UNION, Defendant.**

**Civ. A. No. 89–181.**

United States District Court, D. Vermont.

Feb. 28, 1990.

**30**

D. Patrick Winburn, Manchester, Vt., for plaintiff.

F. Brian Joslin, Theriault & Joslin, Montpelier, Vt., for defendant.

## OPINION AND ORDER

BILLINGS, Chief Judge.

The sole issue in this case is whether the voting apportionment of the Bennington–Rutland Supervisory Union violates the equal protection clause of the United States Constitution. For the forthcoming reasons the court finds that the Bennington–Rutland Supervisory Union Board is not subject to the fourteenth amendment's guarantee of equal voting strength; therefore, the defendant's motion for summary judgment is GRANTED while the plaintiff's cross-motion for summary judgment is DENIED.

## I. BACKGROUND

The material facts in this case are not in dispute. The Bennington–Rutland Supervisory Union (BRSU) was established pursuant to Vt.Stat.Ann. tit. 16, § 261 which authorizes the creation of supervisory un-

ions throughout Vermont by combining appropriate school districts into one supervisory union. The BRSU consists of the school districts of Danby, Dorset, Manchester, Mt. Tabor, Pawlet, Rupert, Sandgate, Sunderland, and Union District # 23. The duties of a supervisory union are prescribed by Vermont law. In general, supervisory unions are required to: coordinate and implement curriculum plans for the sending and receiving schools in the union; disburse federal and state funds; establish policies in the professional development of teachers employed in the supervisory union; and provide special education services to the member districts. Vt.Stat. Ann. tit. 16, § 261a(1)–(7). In addition, supervisory unions are empowered to provide the following services to their member districts: centralized purchasing; construction management; budgeting and accounting; teacher negotiations; and transportation. § 261a(8).

The implementing statute authorizes three members of the school boards of the member school districts to serve as the supervisory union representatives. § 266. Thus, in general, each school district has three votes in conducting the business of the supervisory union.[1] When the school board of a school district has more than three members, the school board is required to elect three of its members to act as the school board's supervisory union representatives. *Id.* Regardless of the number of school board members, however, the BRSU By–Laws allows the school board to elect a single member to represent it and thus cast the school district's votes on BRSU business.[2] BRSU By–Laws, Art. 5.

As structured, the implementing statute allows smaller towns to have as many rep-

---

**1.** If a school district, however, does not employ any teachers, the school district is entitled only to one vote in conducting supervisory union business. Vt.Stat.Ann. tit. 16, § 266.

**2.** The BRSU By–Laws were adopted at the annual meeting of the BRSU in March, 1974. In 1983, however, the Vermont Legislature repealed Vt.Stat.Ann. tit. 16, § 265 which had authorized school boards to elect one member to represent it and cast three votes in conducting supervisory union business. The parties do not

address whether the repeal of § 265 invalidates the corresponding provision of the By–Laws. To its benefit, defendant does not dispute plaintiff's assertion that the By–Laws are in full force and effect. At any rate, while this provision of the By–Laws may support defendant's contention that the BRSU representatives are "appointed" as opposed to "elected," it is not a determinative element of the court's holding; therefore it would be improvident for the court to pass judgment on its validity.

resentatives or votes on the supervisory union as larger towns. The Manchester School District, for example, has a total population of approximately 3,580 and has three representatives or votes on the BRSU while the Sunderland School District has a total population of approximately 850 and also has three representatives or votes; thus, in Manchester one vote on the BRSU represents approximately 1,190 persons while in Sunderland one vote represents approximately 280 persons. In light of these figures, it is not disputed that the apportionment of voting in the BRSU is disproportional to the population of each individual school district; therefore, this court need only decide, as a matter of law, whether the BRSU is subject to the fourteenth amendment's guarantee of equal voting strength as espoused by *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and progeny.

## II. DISCUSSION

The determination of whether the equal protection clause's guarantee of equal voting strength applies to a governmental body requires a two prong analysis. First, the body must be "elected." *Hadley v. Junior College Dist.*, 397 U.S. 50, 56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45 (1970). Second, the entity must perform governmental functions which are general enough and have sufficient impact throughout the district as to require that elections to that body comply with equal protection strictures. *Id.* at 54, 90 S.Ct. at 794; *Barnes v. Board of Directors, Mt. Anthony Union High School Dist.*, 418 F.Supp. 845, 847 (D.Vt.1976).

### A. *Elected Officials*

The equal protection clause is not violated if a State chooses to select members of

an official body by appointment rather than election even though the officials appointed do not represent the same number of people. *Hadley*, 397 U.S. at 58, 90 S.Ct. at 796. At first blush, it appears that the selection process for the BRSU Board falls somewhere between two Supreme Court decisions. On the one hand is *Board of Estimate v. Morris*, 489 U.S. ——, 109 S.Ct. 1433, 103 L.Ed.2d 717, 727 (1989), where the Court held that members of New York City's Board of Estimate were "elected" officials because, as a matter of law, the borough presidents automatically became Board of Estimate members upon their election as borough president. *Morris*, however, is not directly analogous to the instant controversy because BRSU representatives are selected from among the school board members of local school districts and are not, as a matter of law, automatically BRSU representatives upon their election to the local school boards.[3]

On the other hand, is *Sailors v. Board of Educ.*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), where the Court held that county school board members were "appointed" rather than "elected" notwithstanding that the local school board members, in effect, elected the members of the county school board.[4] *Sailors*, however, also differs from the instance case because, unlike the BRSU, election to the local school board in *Sailors* was not a prerequisite to serving on the regional board. *Id.* at 107, 87 S.Ct. at 1551. Because of these distinctions neither *Morris* nor *Sailors* provide a definitive answer to whether BRSU representatives are "elected" when they are chosen by and consist of members of the local school boards.

Fortunately, the court is not without further guidance to resolve this important question. Specifically, in *Rosenthal v.*

**3.** The court recognizes that the local school boards of school districts are often comprised of only three members and thus, as a practical matter, all three might "automatically" act as the supervisory union representatives. This result, however, is not mandated by Vermont law and is therefore, inconsequential for equal protection purposes. *See* Vt.Stat.Ann. tit. 16, § 423(b) (school board of school district may consist of up to five members). The fact that a

local school district chooses to have only three local school board members is beside the point; it is not required to do so.

**4.** The local school board in *Sailors* would first select delegates amongst themselves who would in turn elect the regional board members. 387 U.S. at 106–07, 87 S.Ct. at 1551.

*Board of Educ.*, 385 F.Supp. 223 (E.D.N.Y. 1974), *affirmed without opinion*, 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975), which is not cited by either party, a three judge panel held that a regional school board was "appointed" even though the local school boards were each required to choose the regional school board members from those persons serving on their "elected" local school boards. In rejecting the equal protection claim, the court reasoned that " 'restricting the class of people who may be appointed does not change appointment to election.' " *Id.* at 226 (quoting *Rosenthal*, Civ. No. 72–820 at 11 (E.D.N.Y. Oct. 9, 1973) (district court decision prior to convening three-judge panel)). *Rosenthal* thus expressly refutes plaintiff's contention that BRSU Board "members cannot be considered 'appointed' if election is a perquisite [sic]." Plaintiff's Memorandum in Support of Motion for Summary Judgment at 14 (November 29, 1989). Furthermore, the *Rosenthal* court rejected the argument that because the general electorate possessed the power to remove the regional school board members by refusing to re-elect them to the local school board, the regional board was in effect "elected": "[I]t does not follow that the power of removal is the test of whether a person is appointed or elected." *Id.*

The method by which the regional board members were chosen in *Rosenthal* is virtually the same method in which representatives to supervisory unions in Vermont are chosen, to wit: the regional board must be both comprised of and selected by the local board members. Moreover, *Rosenthal* and the present case both involve a statutory scheme in which the total number

serving on the local board could equal the number allowed to serve on the regional board; thus, in such circumstances, as a practical matter the election of the local board members also determined who would serve on the regional board.[5]

In light of *Rosenthal* and the Supreme Court's summary affirmance thereof, the court concludes that the school district representatives on the BRSU are "appointed" rather than "elected" officials; therefore, the BRSU is not subject to the equal protection clause's guarantee of proportional voting.[6] *See also Burton v. Whittier Regional Vo–Tech School*, 587 F.2d 66, 70 (1st Cir.1978) (relying on *Rosenthal* to uphold a two-tier system of selecting regional school board members). Notably, this holding also comports with the Supreme Court's observation that "The Constitution does not require that a uniform straitjacket bind citizens in devising mechanisms of local government suitable for local needs and efficient in solving local problems." *Avery v. Midland County*, 390 U.S. 474, 485, 88 S.Ct. 1114, 1120, 20 L.Ed.2d 45 (1968).

### B. *Governmental Functions*

Because the court holds that BRSU representatives are "appointed" rather than "elected" officials, there is no need to reach the issue of whether the BRSU performs governmental functions which are general enough and have sufficient impact throughout the supervisory union as to require that elections to that body comply with equal protection strictures.

### CONCLUSION

The plaintiff has failed to establish that the BRSU Board is selected by popular

---

**5.** The statute involved in *Rosenthal* goes further than the Vermont statute and provides that when the school district has one trustee that member represents the district on the regional board. 385 F.Supp at 225. The court does not believe this provision renders *Rosenthal* in conflict with *Morris* because there the applicable statute apparently allowed the election of only one president for each borough who in turn would automatically serve as a board of estimate member. 489 U.S. at ——, 109 S.Ct. at 1437–38, 103 L.Ed.2d at 727. In contrast, in *Rosenthal* the applicable statute did not mandate that the elected members of the local board

per se become members of the regional board; rather, they did so only if the electors of the local school district chose to elect only one trustee.

**6.** A summary affirmance by the Supreme Court is binding precedent and constitutes an endorsement of the lower court's result though not necessarily its reasoning. *See Soto–Lopez v. New York City Civil Serv. Comm'n*, 755 F.2d 266, 272 (2d Cir.1985), *aff'd*, 476 U.S. 898, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986); *Picou v. Gillum*, 813 F.2d 1121 (11th Cir.1987).

election; consequently, the equal protection clause's guarantee of one-person, one-vote does not apply. Plaintiff's cross-motion for summary judgment is thus DENIED while the defendant's motion for summary judgment is GRANTED.

SO ORDERED.