497 F.2d 726
 Joseph S. ROSENTHAL, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF CENTRAL HIGH SCHOOL DISTRICT NO. 3 OF
the TOWN OFHEMPSTEAD et al., Defendants-Appellees, Ewald
Nyquist, Commissioner ofEducation of the State of New York,
Intervenor-Defendant-Appellee.
 No. 768, Docket 73-2729.
 United States Court of Appeals, Second Circuit.
 Argued April 2, 1974.
Decided May 20, 1974.
 
 Joseph S. Rosenthal, pro se, with whom Merril A. Mironer, and Friedlander, Gaines, Ruttenberg & Goetz, New York City, were on the brief, for appellant.
 Bernard Morris, Merrick, N.Y., for appellee.
 Louis J. Lefkowitz, Atty. Gen. of N.Y., with whom Samuel A. Hirshowitz and A. Seth Greenwald, Asst. Attys. Gen., were on the brief, for intervenor.
 Before HAYS and OAKES, Circuit Judges, and CHRISTENSEN, Senior District Judge.*
 CHRISTENSEN, Senior District Judge:
 Plaintiff, a resident and voter in Merrick, Long Island, New York, brought a civil rights action in the district court seeking the convention of a three-judge court for the purpose of granting declaratory and injunctive relief on his allegations that the method of selection provided by the New York Education Law for members of the defendant Central High School District Board was violative of the 'one man, one vote' principle and thus unconstitutional. A single judge of the district court denied plaintiff's motions for a three-judge court and for summary judgment and granted the motion of the defendants and the intervenor to dismiss the complaint for failure to state an actionable claim. The determinative issue presented here is whether the complaint stated a substantial constitutional claim requiring the convening of a three-judge court.[1]
 Plaintiff-appellee, Joseph S. Rosenthal, is a resident of, and eligible to vote in, Merrick, Town of Hempstead, County of Nassau, State of New York. The defendant-appellee, Central High School District, has jurisdiction over the pupils residing within the district who have completed the work of the sixth grade, and possesses the same powers with respect to the high school therein as boards of education of union free school districts have with respect to the elementary schools in their districts.[2]
 Within the area of the Central High School District are four separate union free school districts-- North Bellmore, Bellmore, Merrick and North Merrick, which also are defendants-appellees herein. The members of the boards of each of these union free school districts are elected by the qualified voters in the respective districts.[3]
 The board of education of such component union free school district selects two of its members to serve as representatives on the board of education of the Central High School District. The persons so selected remain members of the central board during their respective terms of office as members of the union free school district boards. Whenever a vacancy occurs in the office of a member of the central board, the local board which had been represented in that office selects one of its members as a replacement to serve on the central board.[4]
 The respective populations of the union free school districts vary widely.[5] Aside from the importance or materiality of disparate weights, it is obvious that to the extent voters in the respective union free school districts determine the identity of members of the board of the Central High School District they exert varying degrees of influence by their votes. That their respective votes do tend to control the selection of central high school board members is evident from the fact that only members of the local board as determined by such votes are eligible for membership on the central board.
 The central board with respect to the high school under its jurisdiction exercises all of the powers which are possessed by boards of the component free school districts with reference to the elementary schools supervised by them. The central board may issue bonds, adopt budgets, hire professional and non-professional employees, establish curricula and generally determine the educational policies and procedures to be implemented at the high school level. It may select sites and plans and propose taxes for school buildings, subject to the approval of the qualified electors of the district.[6] Its action has a practical effect also upon the levy of general school taxes since a proportionate share of its budget is transmitted to each component union free school district for incorporation in the local district's overall school tax.[7] There seems no doubt, as recognized by the district court, that the powers of a central high school district include substantial governmental functions.
 Confronted with plaintiff's motion for the convening of a three-judge court, his alternative motion for summary judgment and the defendants' motion for dismissal of plaintiff's complaint, the judge below granted the latter motion in the view that the complaint did not state a substantial constitutional claim.[8]
 Hadley v. Junior College District of Metropolitan Kansas City, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970), the district court noted, was 'clearly not intended to apply to an appointive board'. It dismissed plaintiff's argument that the central board should be treated as an elected one because its members were chosen from members of the constituent board, who themselves were elected, with the statement that 'restricting the class of people who may be appointed does not change appointment to election', and added:
 'Moreover, the statute (Education Law 1901), requires that a central high school board member be a member of a local board only in the case of common school districts and not in the case of union free school districts, which are the only constituents of Central High School District Number 3.'
 If the latter premise were correct, the controlling effect of Sailors v. Board of Education of the County of Kent, supra, against appellant's position would be indicated. But as has already been noted, election to a local board is a prerequisite to 'appointment' by that local board as a member of a central high school board.[9]
 We are mindful of Sailors' teaching that the 'one man, one vote' principle does not apply to an appointive board. But the question remains whether within its rationale the members of the central high school board are 'appointed' or 'elected' officers, and if strictly neither whether the manner of their selection falls more nearly within the ambit of Hadley than of Sailors.
 Were the members of the central high school board to be appointed from among residents of the respective districts without reference to whether or not they had been otherwise elected, we would have essentially a Sailors' situation with no substantial federal constitutional question remaining. Had election as a member of a local board served automatically to designate that elected member also as a member of a central high school board, the 'one man, one vote' concept would have been offended since the vote of residents of the larger local districts would have been impermissibly diluted with respect to their representation on the central high school board.[10]
 Yet we have neither of these situations precisely, but one lying somewhere between them, and thus between Sailors and Hadley. We are concerned with an election in a local district which will determine not only membership in the local board but eligibility for membership on a central high school board. The number serving on the local boards involved here vary between five and seven. Out of the membership of each local board two are designated as members of the central high school board, which as a total membership of eight.
 We conclude that such a situation, being directly controlled neither by Sailors nor Hadley, presented a substantial constitutional question. As such, its answer was not within the competence of a single judge[11] and required the convening of a three-judge court.
 The constitutional claims in this case are not 'so attenuated and unsubstantial as to be absolutely devoid of merit', Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904), or 'no longer open to discussion', McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95 (1909). The prior decisions of the Supreme Court did not 'inescapably render the (plaintiff's) claims frivolous', Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1970). Their unsoundness did not 'so clearly (result) from the previous decisions of this (Supreme) court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). These authorities were reviewed most recently in Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577, 42 U.S.L.W. 4381 (Mar. 25, 1974), in the context of the Civil Rights Act. Mr. Justice White wrote for the majority:
 
 
 1
 'The substantiality doctrine as a statement of jurisdictional principles affecting the power of a federal court to adjudicate constitutional claims has been questioned, Bell v. Hood, 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), and characterized as 'more ancient than analytically sound.' Rosado v. Wyman, supra, 397 U.S. at 404, 90 S.Ct., at 1214. But it remains the federal rule and needs no reexamination here, for we are convinced that within accepted doctrine petitioners' complaint alleged a constitutional claim sufficient to confer jurisdiction on the District Court to pass on the controversy.' 42 U.S.L.W. at 4385 (94 S.Ct. at 1379).[12]
 
 
 2
 The standards for determining the substantiality of a constitutional claim requiring a three-judge court are essentially the same as those applied to the corresponding problem of substantiality under the Civil Rights Act.[13]
 
 
 3
 Beyond holding that plaintiff's complaint presented a substantial constitutional claim not subject to adjudication by a single judge, we express no opinion concerning the merits.
 
 
 4
 Reversed and remanded for the constitution of a three-judge court and further proceedings not inconsistent with this opinion.
 
 
 
 *
 Of the District of Utah sitting by designation
 
 
 [1]
 Appellant also assigns as error the refusal of the district judge to grant his motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. While the facts were not in substantial dispute, the problem of law was substantial, not frivolous. Not meaning to indicate that under other circumstances summary judgment necessarily is precluded by the existence of a substantial constitutional question, in effect here this would be the result as far as concerns the decision of a single judge; the existence of such a question leaves him with no alternative but to convene a three-judge court
 
 
 [2]
 New York Education Law 1903, McKinney's Consol.Laws, c. 16, Powers of board of education; laws applicable. The board of education of a central high school district shall have jurisdiction over the pupils residing therein who have completed the work of the sixth grade and shall have the same powers and duties in respect to the school therein as a board of education of a union free school district has, under this chapter, in respect to the schools in such district. Except as otherwise provided in this article, the provisions of this chapter as to the courses of study, the qualifications and employment of teachers and the maintenance, conduct and supervision of public schools in union free school districts shall apply to a central high school district
 
 
 [3]
 New York Education Law 2032 et seq
 
 
 [4]
 New York Education Law 1901. Central high school districts; number and election of members of board of education
 Existing central high school districts are continued. Boards of education of such central high school districts heretofore established shall continue as constituted under the order of the commissioner of education. The number of their members shall be not less than five. There shall be . . . at least two (members of such board) from each union free school district within the central high school district. The board of education of each union free school district in each such central high school district shall appoint the number of persons so designated by the commissioner to represent such district as members of the board of education of such central high school district . . .. The persons so designated shall be members of the board of education of the central high school district during their terms of office as members of the board of education . . . of the districts respectively represented by them. Whenever a vacancy shall occur in the office of a member of the board of education of such central high school district, it shall be filled as above provided.
 
 
 [5]
 North Bellmore, 23,105; Bellmore, 18,697; Merrick, 25,940; North Merrick, 13,724
 
 
 [6]
 Education Law 1910, 1911
 
 
 [7]
 If the taxes are voted by the electors within the central high school district each local school district collects its proportional share with its own taxes and pays such share to the central board
 
 
 [8]
 Primary reliance was placed upon Sailors v. Board of Education of County of Kent, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967); but reference was also made to Salyer Land Co. v. Tulare Water District, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973); Associated Enterprises, Inc. v. Toltec Watershed Improvement District, 410 U.S. 743, 93 S.Ct. 1237, 35 L.Ed.2d 675 (1973); Egan v. Wisconsin State Board of Vocational, Technical and Adult Education, 332 F.Supp. 964 (E.D.Wis.1971); Oliver v. Board of Education of the City of New York, 306 F.Supp. 1286 (S.D.N.Y.1969), and Board of Education v. Board of Cooperative Educational Services, 37 A.D.2d 330, 325 N.Y.S.2d 592 (3d Dept. 1971), aff'd, 31 N.Y.2d 1020, 341 N.Y.S.2d 897, 294 N.E.2d 657 (1973)
 
 
 [9]
 In oral argument, defendant Central High School Board contended that even though this were so, a member of the central high school board could continue in office after his term as a member of the local board had expired. This appears not to be authorized by the statute, but in any event we do not regard such qualification, if any, as of significance on the problem before us
 
 
 [10]
 'This Court has consistently held in a long series of cases, that in situations involving elections, the States are required to insure that each person's vote counts as much, insofar as it is practicable, as any other person's . . . The right to vote in an election is protected by the United States Constitution against dilution or debasement. While the particular offices involved in these cases have varied, in each case a constant factor is the decision of the government to have citizens participate individually by ballot in the selection of certain people who carry out governmental functions . . . If one person's vote is given less weight through unequal apportionment, his right to equal voting participation is impaired just as much when he votes for a school board member as when he votes for a state legislator.' Hadley v. Junior College District, supra, 397 U.S. at 54-55
 
 
 [11]
 It is established, of course, that a single judge may dismiss a complaint attacking the constitutionality of a state statute and seeking an injunction against enforcement where no substantial constitutional issue is raised; but where such an issue is raised, the converse is true. Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933)
 
 
 [12]
 The dissenting judges expressed doubt (Id. at 4392 (94 S.Ct. at 1393)) of the sufficiency of the constitutional claim, and concluded that even if the equal protection claim 'meets the threshold of substantiality for jurisdiction in the federal courts . . . the district court should have declined to exercise pendant jurisdiction over the Supremacy Clause claim and referred the equal protection claim to a three-judge court.'
 
 
 [13]
 See Hagans v. Lavine, supra, at 4384; Rosado v. Wyman, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). See also Garfinkle v. Wells-Fargo Bank, 483 F.2d 1074, 1077 (9th Cir. 1973) (insubstantiality test for 'federal question' jurisdiction under 28 U.S.C. 1331)