**Stephen P. VERNET Plaintiff,**

v.

**BELLMORE–MERRICK CENTRAL HIGH SCHOOL DISTRICT Defendant.**

No. CV–04–2358.

United States District Court, E.D. New York.

Oct. 22, 2004.

| District | Population (Approximate) |
|---|---|
| Bellmore | 16,491 |
| North Bellmore | 20,079 |
| Merrick | 22,764 |
| North Merrick | 11,849 |

Thomas F. Liotti, Law Offices of Thomas F. Liotti, Garden City, NY, for Plaintiff.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant Bellmore–Merrick High School District ("Bellmore–Merrick") moves, prior to serving its answer, to dismiss Plaintiff Stephen P. Vernet's ("Mr.Vernet") complaint pursuant to FED. R. CIV. P. 12(b)(6) on the ground that the exact same claims were decided by this Court thirty years ago in favor of Bellmore–Merrick.

Mr. Vernet brings this action under 42 U.S.C. § 1983, and invokes the jurisdiction of this Court under 28 U.S.C. §§ 1331 and 1343. Jurisdiction is further invoked under 28 U.S.C. §§ 2201 and 2202 as Mr. Vernet is seeking a declaratory judgment.

The Court heard oral arguments from both parties on October 15, 2004.

For the following reasons, Bellmore–Merrick's motion is **GRANTED**.

### Facts

Bellmore–Merrick is organized under New York Education Law § 1901. Bellmore–Merrick oversees the administration of two middle schools and three high schools located in the Town of Hempstead, Nassau County, the State of New York. Bellmore–Merrick is composed of four Union Free School Districts ("UFSD"). The respective populations of the four UFSD's vary widely:

(Compl. ¶¶ 37–41).

The four districts govern the elementary schools that feed into two middle schools and three high schools which make up the Bellmore–Merrick school district. The UFSD's, i.e. the elementary schools, are each governed by a school board consisting of members elected by the residents of each Union Free School District:

| UFSD | Number of Board Members |
|---|---|
| Bellmore | 6 |
| North Bellmore | 5 |
| Merrick | 6 |
| North Merrick | 7 |

(Compl. ¶¶ 20–23).

Each school board, acting separately for their own UFSD's, then appoints two of its members to serve on the Bellmore–Merrick school board which governs the middle and high schools. (Pl.'s Compl. ¶ 26). The residents of the four UFSD's do not vote directly for the individuals who serve on the Bellmore–Merrick school board. (Compl. ¶ 27).

Mr. Vernet claims that the current practice of allowing each UFSD to select two of its members to serve on the Bellmore–Merrick school board despite a disparity in the number of residents within each UFSD, violates the "one man, one vote" principle and the Equal Protection Clause of the 14th Amendment. Mr. Vernet contends the individual votes of residents in each of the UFSD are "diluted" because each UFSD has the same number of members selected to represent their community on the Bellmore–Merrick school board. (Compl. ¶¶ 43–49).

### Standard

In deciding a motion to dismiss under FED. R. CIV. P. 12(b) the Court is required to accept as true all factual allegations in the complaint and to consider documents attached to and incorporated by reference in the complaint. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991), *cert. denied* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). In a Rule 12(b)(6) motion to dismiss for failure to state claims upon which relief may be granted, Bellmore–Merrick bears the burden of showing that even if Mr. Vernet's allegations are accepted as true, and all reasonable inferences are drawn in Mr. Vernet's favor, Mr. Vernet is still not entitled to relief. *See Lerner v. Fleet Bank,* 318 F.3d 113, 117 (2d Cir.2003).

### Discussion

*I. Defendant's Argument: The Decision in Rosenthal v. Board of Education Mandates Dismissal of Plaintiff's Action.*

Bellmore–Merrick's sole reason for dismissal of Mr. Vernet's claims is grounded in the *stare decisis* impact of a 1974 decision by this Court involving the same claims and defendant. (Def.'s Mem. Sum. J. at 5). *Rosenthal v. Board of Education of Central High School District No. 3 of the Town of Hempstead,* 385 F.Supp. 223 (E.D.N.Y.1974), *aff'd,* 420 U.S. 985, 95 S.Ct. 1418, 43 L.Ed.2d 667 (1975).[1] In that case, the Court considered whether the process by which board members are chosen to serve on the Bellmore–Merrick

school board violated the "one man, one vote" principle and was therefore unconstitutional. (Def.'s Mem. at 5). The Court held that the two-tiered method of choosing board members was an appointive vice elective process and that the "one man, one vote" principle only applied in cases where "the officials whose election is challenged must have been elected by popular vote." *Rosenthal* 385 F.Supp. at 226 (*citing Hadley v. Junior College District of Metropolitan Kansas City, Missouri,* 397 U.S. 50 at 54, 90 S.Ct. 791 at 794, 25 L.Ed.2d 45 (1970)). (Def.'s Mem. at 6–7).[2]

### II. *Plaintiff's Response*

*a. Rosenthal mislabeled the Bellmore–Merrick school board selection process as an appointive governing body.*

Mr. Vernet concedes that "(i)n *Rosenthal,* the Second Circuit properly recognized the 'one man, one vote' principle only applies to elective bodies." (Pl.'s Opp. Mem. at 6).

Mr. Vernet argues that although the Second Circuit correctly reaffirmed the Supreme Court's holding that the "one person, one vote" principle does not apply where officials are appointed, the Bellmore–Merrick school board only *appears* to be an appointed governing body. (*Id.*). Mr. Vernet alleges that the term appointment is merely a label misapplied to the Bellmore–Merrick school board selection process and argues that discovery should be permitted to substantiate this allegation. (*Id.*).

---

**1.** The Board of Education of Central High School District No. 3 of the Town of Hempstead later became the Bellmore–Merrick Central High School District.

**2.** Bellmore–Merrick further advises that this Court recently reaffirmed the principles in *Rosenthal,* specifically that "the 'one person, one vote' principle ... has no applicability when the governmental body at issue is ap-

pointive rather than elective." *Cohanim v. New York City Board of Education* 204 F.Supp.2d 452 (E.D.N.Y.2002)(unpublished)(*quoting Warden v. Pataki,* 35 F.Supp.2d 354 at 360 (S.D.N.Y.1999)). (Def.'s Mem. at 7). This Court notes that the *Cohanim* opinion is unpublished, and therefore has no precedential value in this Circuit. 2D CIR. R. 0.23.

Mr. Vernet, however, fails to allege any facts in his complaint whatsoever to support his contention that the Bellmore–Merrick school board selection process is anything other than appointive in nature. (Compl. *passim*). Mr. Vernet challenges whether the *Rosenthal* Court properly defined the Bellmore–Merrick school board's selection process on the grounds that the "plaintiff in *Rosenthal* did not conduct an evidentiary exploration of the issue of elective versus appointive nature of the [Bellmore–Merrick school board]." (Pl.'s Opp. Mem. at 7).

The Court of Appeals for the Second Circuit convened the *Rosenthal* three Judge panel specifically for the task of deciding whether the Bellmore–Merrick school board selection process was appointive or elective. *Rosenthal v. Board of Educ.*, 497 F.2d 726 at 729 (2d Cir.1974). The three Judge panel determined that the nature of the Bellmore–Merrick school board selection process was appointive in nature. *See Rosenthal* 385 F.Supp. at 224–27. Included in the Court's analysis was testimony from the then President of the Bellmore–Merrick school board concerning the functions of the school board. *Id.* The Court also reviewed New York Education Law § 1901. *Id.* Mr. Vernet provides no reason for this Court to doubt that the *Rosenthal* three Judge panel would have come to a different conclusion today considering the two tier selection process remains—as Mr. Vernet concedes—unchanged.

Mr. Vernet further alleges that he has learned, through his own research, that members of the Bellmore–Merrick school board "are voted upon by motion in open meetings of the Union Free School District Boards of Education." (Pl.'s Opp. Mem. at 8). Mr. Vernet does not describe the research he conducted. (Id.) Moreover, Mr. Vernet's complaint is devoid of any factual allegations related to such research. (Compl. *passim*). He further questions whether the names of those selected to be on the Bellmore–Merrick school board are "discussed" and whether "general campaigning" occurs during UFSD meetings. (Pl.'s Opp. Mem. at 8). Mr. Vernet asks this Court to permit further discovery in the hopes of substantiating these questions on the grounds that "all of these events and more are indicative of an election." (*Id.*).

Naturally board members wishing to be appointed to a position of increased responsibility would not simply sit on their hands and wish for an appointment. Even if it were true that members of the individual UFSD's campaigned amongst their colleagues to be selected to the Bellmore–Merrick school board, that fact would not change the essential appointive nature of the selection process. The key factor in deciding whether the Bellmore–Merrick school board selection process violates the principle of one person, one vote, is whether the board members selected to serve on the Bellmore–Merrick school board are popularly elected: "The emphasis we put on popular election as the test echoes the Supreme Court's recognition that the crucial factor in the application of Fourteenth Amendment considerations to any apportionment scheme is that the officials whose election is challenged must have been elected by popular vote." *Rosenthal v. Board of Educ.*, 385 F.Supp. at 226.

b. *The current structure of the Bellmore–Merrick Central High School District supports a weighted voting system and is therefore unconstitutional.*

Mr. Vernet's other argument is that the current selection process of the Bellmore–Merrick school board supports a weighted voting system. Mr. Vernet contends that his ability to participate in the selection of members to the Bellmore–Merrick school board is diluted because his more populous

UFSD has an equal number of members on the Bellmore–Merrick school board as do the smaller UFSD's. (Pl.'s Opp. Mem. at 8). Mr. Vernet asks the Court to compare the facts of this case to *Jackson v. Nassau County Board of Supervisors*, 818 F.Supp. 509 (E.D.N.Y.1993), in which a group of residents in Nassau County challenged the make-up of the Nassau County Board of Supervisors on the grounds that the more populous Town of Hempstead had more weighted votes than the other, smaller towns, and that such practice was unconstitutional. (Pl.'s Mem. at 9).

At the time the Court in *Jackson* evaluated the political process in Nassau County, the Nassau County Board of Supervisors were elected from each of the five towns within Nassau County using a weighted voting system. This method of voting gave supervisors from more populous towns more voting power when deciding issues before the Board. The Court determined that this process was unconstitutional on the grounds that i) the "one man, one vote" applied to local governmental agencies; ii) the United States Supreme Court had rejected weighted voting; and iii) the formula by which votes were distributed amongst the towns in Nassau County created a standard deviation between the actual population and the weighted votes which was impermissibly large and thereby violated the one person, one vote requirement. *See Jackson* 818 F.Supp. at 534.

Bellmore–Merrick responds that *Jackson* is distinguishable form the case at bar because representatives on the Nassau County Board of Supervisors were popularly elected. In this case there exists a two-tiered system in which the Bellmore–Merrick school board members are not popularly elected but appointed by school boards which are popularly elected. (Def.'s Reply Mem. at 4). Bellmore–Merrick asserts that under the holding of *Ro-senthal* it does not matter in a two-tiered selection process that the members of the local boards who make the appointments to the second tier were themselves popularly elected. *See Warden v. Pataki*, 35 F.Supp.2d 354 (S.D.N.Y.1999), *aff'd* 201 F.3d 430, 1999 WL 1012404 (2d Cir.1999), *cert. denied*, 531 U.S. 849, 121 S.Ct. 122, 148 L.Ed.2d 77 (2000). (Def.'s Reply Mem. at 5).

This Court agrees with Bellmore–Merrick that *Rosenthal* and *Warden* provide the requisite *stare decisis* effect to stave off Mr. Vernet's challenges to the appointive nature of the Bellmore–Merrick school board and his claim that residents' votes within the UFSD's are diluted. *Jackson* is distinguishable because in that case the residents of Nassau County directly elected members to the Board of Supervisors whereas in the case at bar, the Bellmore–Merrick's school board members are appointed.

The result is the same even if this Court applied the holding in *Jackson* to the first tier of the Bellmore–Merrick school board selection process. The individual UFSD's do not meet as a single governing unit unlike the now dismantled Nassau County Board of Supervisors. The weight of one resident's vote is equal to any other vote within the Bellmore, North Bellmore, Merrick or North Merrick school districts when choosing representatives for their applicable UFSD. Neither the first or second tier of the Bellmore–Merrick school board selection process involves the unconstitutional practice of weighted voting as described by the Court in *Jackson*.

## Conclusion

Mr. Vernet seems to suggest that the issue of diluted voting was a new inequity in the American political landscape discovered by the Court in the *Jackson* case: "Until the mid–1990s the courts tolerated an illegal weighted voting system which violated the 'one man, one vote' principle."

(Pl.'s Opp. Mem. at 8). In fact, the *Rosenthal* Court specifically discussed the issue of weighted voting in its analysis of the Bellmore–Merrick school board selection process: "If plaintiff did in fact vote for the members of the [Bellmore–Merrick school board] representing his union free school district, his vote would be diluted in violation of the one man, one vote principle." *Rosenthal* 385 F.Supp. at 226. The Court instead held that the Bellmore–Merrick school board was appointive in nature and so like Mr. Rosenthal's claims thirty years ago, Mr. Vernet's contention that his vote as a resident within the Bellmore–Merrick school district is diluted has no merit. Despite Mr. Vernet's frustrations with New York Education Law § 1901 and the Bellmore–Merrick school board selection process, nothing presented by Mr. Vernet in his complaint persuades this Court that the holding in *Rosenthal* should be disturbed.

Accordingly, Defendant Bellmore–Merrick's motion pursuant to FED. R. CIV. P. 12(b)(6) to dismiss Plaintiff Mr. Vernet's complaint is hereby **GRANTED**.

**SO ORDERED.**